ELIZABETH ELDREDGE *vs.* JOHN T. HEARD & others.

A testator, who died in 1867, gave the residue of his estate, (which amounted to over $668,000,) to trustees in trust to pay the net income to his daughter, (who was a widow, fifty-one years of age, without children,) for life, and on her death the principal to go to her issue, but if she left no issue, then half to one of the trustees and half to the testator's heirs, as if he had died intestate; and he gave the trustees power to change investments, including real estate, as they might deem most beneficial for the parties interested in the trust, but recommended them to invest in real estate in Boston whenever a good opportunity offered. Included in the residuary estate was a lot of land in Dorchester, which the testator had purchased, worth from $15,000 to $20,000, but lying unimproved and not yielding sufficient income to pay the taxes and incidental charges thereon. Dorchester was annexed to Boston in 1869, and in consequence the land rose in value to

$25,000, and perhaps more, and could readily have been sold for a fair price, but was likely to continue to increase in value. The daughter, who received an income of $32,000 a year under the will, requested the trustees to sell this lot; but they thought it inexpedient to do so, on the ground that she did not need the income. *Held*, on the petition of the daughter to compel such a sale, that the court would not interfere with the discretion of the trustees by ordering a sale, although she offered to pay a bonus of $2000 to the trust fund, over any price the land might bring, and notwithstanding the contingent interest of one of the trustees in the fund.

PETITION for a decree to compel a sale of real estate held by John T. Heard and Edward D. Sohier, as trustees under the will of John W. Trull. The case was heard by the chief justice, and reported for the determination of the full court, substantially as follows :

John W. Trull died on April 12, 1867, leaving a will by which, after giving to the petitioner, who was his only child, his household furniture, and the use for life of his dwelling-house in Boston, and giving several legacies, he gave all the residue of his estate to Heard and Sohier in trust to manage the same and pay the net income to the petitioner during her life, on her death the trust property to go to her issue, but if she should leave no issue surviving, then to go one half to Heard and the other half to the testator's heirs, as though he had died intestate. The will continued thus : " I give my said trustees and their successors, and any person acting as trustee under this will, full power and authority to sell any and all real estate of which the trust premises shall be at any time composed, and to make any and all deeds, and do any and all acts, necessary or proper for carrying into full effect any and all such sales ; and the purchaser from such trustees shall not be bound to see to the application of the purchase money. And I give my said trustees, and their successors, and any persons acting as trustees under this will, full power and authority to invest, reinvest and change any and all property of which the trust premises shall be at any time composed, in such manner as they may deem most beneficial for the parties interested in the fund ; but I recommend them, whenever a good opportunity offers, to invest the trust moneys in real estate situate in the city of Boston, which I consider the best and safest investment, or in notes secured by mortgages of real estate in said city."

At the time of the testator's death, the petitioner was a widow, fifty-one years old, without children. The personal property which came to the hands of the trustees was of the value of $446,064 at the time of the testator's death; the real estate in Boston devised to them, not including the reversion of the testator's dwelling-house, was of the value of $206,750 at that time; and the real estate not in Boston devised to them was at that time of the value of $15,450. Included in the real estate outside of Boston was a lot of land in Dorchester, unoccupied and unimproved, which was purchased by the testator. It produced no income, except about $100 a year.

In 1868 the petitioner requested the trustees to sell this lot; and they named a price, but withdrew the offer before it was accepted, as there was a probability that Dorchester would be annexed to Boston. The land was then worth from $15,000 to $20,000, but in consequence of the annexation of Dorchester, which took place in 1869, it has risen in value to about $25,000. Some persons think it worth much more than $25,000; and if sold, it would bring a fair price; and since the annexation the trustees have been repeatedly requested to name a price, but have declined to do so. "It would be for the interest of the petitioner to have it sold, the taxes and incidental expenses of taking care of it amounting to a considerable sum above the income, and being deducted from the gross income of the trust estate. But it does not appear to be for the interest of the persons interested in the remainder to have it sold, as they pay no taxes or interest, and the value of the property is likely to increase hereafter, though o what extent or at what time does not appear. A horse railroad passes it, and the city is growing in that direction by the erection of a considerable number of new buildings. No unusual public improvement was shown to be contemplated in the neighborhood. The trustees think it inexpedient to sell at present, because they say that the petitioner does not need the income. She receives about $32,000 a year, under the will. Some of the persons claiming to be remaindermen under the will, but not all of them, are poor. The petitioner offered, at the hearing, to pay a bonus of $2000 to the trust fund, over any price the land might

Eldredge *v.* Heard.

bring. The probable use of the land, if sold, would be for build-ing purposes."

*F. V. Balch & W. Minot, 3d,* for the petitioner.

*G. D. Noyes,* for some of the remaindermen, was stopped by the court.

*C. A. Welch,* for the trustees, was not called upon.

WELLS, J. The will reposes a discretion in the trustees in re-gard to the sale of the real estate. They have exercised that dis-cretion against a sale. There is nothing to show that they have exercised it improperly or unwisely.

The investment is one which was selected by the testator him-self. The property is not expensive in its care, nor liable to waste. There is reasonable ground to expect a further advance in its market value, more than equivalent to the loss of income and the amount of taxes and expenses. Considering the trust as one entire fund, without regard to the diversity of interests in the *cestuis que trust,* the trustees appear to the court to have exercised their discretion judiciously.

The case does not show a deficiency of income for the comfort-able and proper support of the life tenant; nor does it appear that, considering the amount of the entire principal of the fund, the net annual income which the life tenant receives is not ade-quate and reasonable, as the product of said fund.

Although one of the trustees has, contingently, an interest in the remainder, which might influence him, in the exercise of his discretion, against a sale, yet as nothing appears to show that he has been or is so influenced, or that the retention of the invest-ment is injudicious, or unfair to the life tenant, that liability to be influenced does not alone require, and will not justify, the inter-ference of the court to direct a sale. *Petition dismissed.*