EDWARD D. MANDELL, administrator, *vs.* MEHITABLE H. GREEN & others.

GEORGE HOWLAND & others, trustees, *vs.* MEHITABLE H. GREEN & others.

A testatrix, in her will, after making specific legacies of money, gave the residue of her estate in trust to pay the income thereof to a niece during her life and on her death the capital to other persons. During a delay in settling the estate, taxes were paid thereon, and there were earnings thereof; and controversies arose, to settle which the parties in interest agreed that the executor should pay to the specific legatees interest at a certain rate on their several legacies from the date of the death of the testatrix, "the same, with principal, tȯ be received in full of all claim because of said legacies and the delay in the payment thereof," and that the trustees should take the remaining assets and divide them into two parts, the first to consist of the earnings of the estate since the death of the testatrix, for which part they should account to the niece, and the second part to consist of the rest of said assets and constitute the capital of the trust fund; and the trustees made a supplemental agreement with the niece, that the said first part should consist "not of gross earnings, but of earnings less interest on legacies as aforesaid," and so be accounted for. The compromise, thus expressed, was affirmed by this court, in a suit in equity brought for that purpose by the executor, and it was decreed therein that the costs of all the parties to the compromise should be paid from the estate. Afterwards, the niece objected to the executor's paying the specific legacies in full, and claimed that he should "withhold from each one of the same the portion of the taxes paid which may be legally attributable to it, or that he should take it from the capital of the estate and not from the income of any portion thereof;" the executor filed a bill in equity stating this claim of the niece, and praying for the instructions of the court upon the questions whether he should pay the legacies in full, with interest, or with a proportional deduction on account of the taxes, and whether the expenses of all parties to this suit should be charged to the legacies, or to the income, or to the capital, of the residue of the estate; and it was admitted at the argument that the second alternative of the niece's claim was untenable. *Held,* that the agreement of compromise clearly required the legacies to be paid in full with interest, and without any deduction for taxes; that the second alternative of the claim of the niece was not presented by this bill; and that the costs and expenses of all parties must be paid out of the income falling to the niece. *Held, also,* in a suit in equity brought by the trustees for instructions, that these taxes, together with the costs of this suit and of the suit to affirm the compromise, were chargeable to the capital and not the income of the trust fund.

THE FIRST CASE was a bill in equity, filed October 4, 1871, by the administrator *de bonis non,* with the will annexed, of the estate of Sylvia A. Howland, singlewoman, praying for instructions.

The bill alleged that Miss Howland died July 2, 1865, resident at New Bedford, and leaving a last will, which was duly proved

and allowed in November of that year ; that this will gave many specific legacies of money directly, and some in trust to pay the income to beneficiaries for life, and on their death the principal to others, and in the twelfth article * thereof gave the residue of the estate in trust to pay the income to Mehitable H. Robinson, (since married to Edward H. Green,) a niece of the testatrix, for her life, and on her death the principal to the lineal descendants then living of Gideon Howland, a grandfather of the testatrix ; that the will named trustees of all the trusts aforesaid, who had since been duly qualified ; that after the death of the

* " Twelfthly. All the rest, residue and remainder of my estate and property, real, personal and mixed, wheresoever the same may be, however invested, in whatever consisting, howsoever described, or wherever situate, I give, devise and bequeath to " three trustees named, " their heirs and assigns, in trust, for the uses and purposes herein set forth. And I direct and empower the said trustees, and their successors in said office, to manage and improve the whole of said estate, and to sell and convey any portion thereof, whether real or personal, and to invest and reinvest the principal thereof, and so to care for and conduct the same as in their judgment shall be best for the interest of all concerned. And from the rents, profits and income from the said property, I direct them to pay all taxes, expenses, charges and commissions of whatever name or nature, that shall be assessed upon, or arise from, or grow out of the said residuary estate, or the management, care or disposition thereof ; and the balance of said rents, profits and income shall be deemed to be the net income from the said estate; and I direct the said trustees to pay the said net income from time to time to my niece, Hetty H. Robinson, the daughter of my sister Abby S. Robinson, during the life of said Hetty H. Robinson. I wish said trustees to make said payment when and as often as it may in their judgment be convenient for them so to do. And in the management, disposition and sale of said property, and in the investment from time to time to be made, it is my will that the said trustees shall exercise their own judgment, and shall act and do in all respects what shall be deemed by them to be for the interest of all parties concerned in said estate. And upon the decease of said Hetty H. Robinson, I direct and order said trustees, and their successors in said office, to pay over, distribute and divide the whole of said residuary estate to and among all the lineal descendants, then living, of my grandfather Gideon Howland ; and if all the lineal descendants aforesaid then living are in the same degree of kindred to the said Gideon Howland, they shall share the said estate equally and shall be paid in equal shares, otherwise they shall take according to the right of representation, and the said trustees shall pay them respectively such portion as shall according to the right of representation belong to them.

testatrix, until November 1865, the probate of the will was resisted by Mrs. Green; that she then further delayed a settlement of the estate, by filing a bill in equity in the circuit court of the United States, in which she made claim to all the estate of Miss Howland by virtue of an alleged contract between them for mutual wills, which bill was finally dismissed in February 1870, without costs, by agreement of the parties; and that during the interval since the death of the testatrix large increase and earnings accrued to the estate, and controversies arose between the interested parties in relation thereto, for the purpose of adjusting which controversies all said parties on October 3, 1870, entered into a written agreement, styled a compromise, of which the following are the material articles:

" 1. The administrator *de bonis non*, with the will annexed, shall pay to each and every party legatee under the will of Sylvia A. Howland, other than Mrs. Green, and the descendants of Gideon Howland, legatees of the residue principal, interest on their several legacies at six per cent. per annum from the date of the decease of said Sylvia, but without rests; and the same, with principal, shall be received in full of all claim because of said legacies and the delay in the payment thereof.

" 2. The trustees of the residue of the estate shall take the assets remaining after the payment of the debts and expenses of administration and all and singular the other legacies given in and by said will, with interest as before stipulated, and divide the said residual portion into two parts, the first part of which shall consist of the earnings of the estate since the death of said Sylvia, and the second part of which shall consist of the balance of said residue; and said trustees shall, under the provisions of the trust, account for said first part to Mrs. Green and her legal representatives; and said second part shall constitute the principal of the trust fund, to be retained and kept by them as trustees, under the provisions of the will."

The bill then alleged that the trustees of the residuary fund, on October 19, 1870, entered into a further agreement with Mrs. Green and her husband, styled a supplement to the compromise, of which the following is the material portion:

" It is understood and agreed by and between said parties, that, after the trustees shall have taken the assets coming to them from the administrator *de bonis non*, with the will annexed, as provided in the second article of said compromise, in dividing the same into two parts, the first part, so called, shall consist of the earnings of the estate since the death of said Sylvia, less the amount paid as interest upon the legacies of said will, as provided in the first article ; and this supplemental agreement is made, to the end that it may be manifest that the first part aforesaid is to consist not of gross earnings, but of earnings less interest on legacies as aforesaid, and, so constituted and ascertained by the trustees, shall, under the provisions of the trust, be accounted for by said trustees to said Hetty H. Green and her legal representatives ; and the other part shall constitute the residuary principal fund, to be held by said trustees under the provisions of said will."

The bill also alleged that this plaintiff filed a bill in equity in this court to establish said compromise and supplement, in which bill all interested parties in being were joined as defendants, with a representative, appointed by the court, of the contingent interest of descendants of Gideon Howland ; that at October term 1870, after a full hearing of all the parties, it was on November 3, 1870, decreed therein " that the said compromise and supplement should be approved, and be valid and binding upon all actual interests, and upon all future and contingent interests in said estate, and the costs and expenses of all parties to said compromise bill should be paid by the plaintiff out of the estate in his hands ; " and that by reason of the terms of said compromise and supplement the plaintiff had been able to pay over to the trustees of the residuary fund large sums of money and securities, amounting to nearly all the estate of said Sylvia, with the increase thereof, after paying the debts and specific legacies.

The bill further alleged that for the years 1868 and 1869 taxes to the amount of $15,570.25 were assessed against the plaintiff, under the laws of the United States relating to internal revenue, upon the income of the estate of the testatrix, the amount of said taxes for 1868 being $5,759.35, and for 1869 being $9,810,90, and although he resisted the levying of these taxes, and endeav-

ored to procure abatements thereof, for divers errors and informalities not now needful to be stated, yet, in order to avoid their forcible collection from the estate, he was compelled to pay them, but did so under protest; that in the years 1866–1870, during the said delays in the settlement of the estate, it was subjected through the city of New Bedford to assessments of state, county and city taxes, amounting to $59,620.82, and by the city of Providence in Rhode Island to municipal taxes, amounting to $96.08 , that, in respect to the United States tax above mentioned, " Mrs. Green insists that said tax was in fact assessed by the constituted authorities upon and in respect of the earnings and income of said estate during said years 1868 and 1869, which said earnings and income enured to the benefit of all parties entitled to present income under said will, including not only herself, the *cestui que trust* for life in the residuary legacy, but all other legatees, and she objects to such payments of particular legacies and interest in full, and insists that the plaintiff shall withhold from each one of the same the due and appropriate portion of said $15,570.25, which may be legally attributable to such legacy, or that he should take it from the capital of the estate and not from income of any portion thereof ; " that, in respect to the local taxes also above mentioned, " the plaintiff has regarded them as diminutions of the body of the estate, and in no manner affecting said particular legatees, and he will, unless otherwise instructed, act accordingly, but Mrs. Green objects thereto and claims that said taxes should be apportioned in part to said particular legatees ; " and finally, that " it is now important that the estate of said Sylvia should be settled and fully distributed, and said particular legatees urge and require the plaintiff now to pay them in full."

The prayer of the bill was for instructions " whether the plaintiff should pay said particular legacies in full with interest, and without deduction by reason of said taxes paid as aforesaid, or whether he should retain from each or certain legacies proportional amounts towards the payment of said sums," and also " whether the expenses of the parties to this suit should be charged to said particular legacies, or to the income, or to **the** capital, of the residuary portion of th³ estate."

All the above mentioned legatees and trustees were made defendants, and answered, admitting the truth of the plaintiff's allegations and praying that he might be instructed as he desired; and the case was reserved by *Colt*, J., on the bill and answers, for the determination of the full court.

*G. Marston & W. W. Crapo*, ( *C. W. Clifford* with them,) for Mrs. Green and her husband.

*T. M. Stetson*, for other legatees.

GRAY, J.   The only questions as to which the plaintiff in this bill asks the instructions of the court, and the only ones therefore which can be decided in this suit, are, 1st. Whether the particular legacies should be paid in full, with interest, and without deduction for taxes ; and, 2d. Whether the expenses of the parties to the suit should be charged to the particular legacies, or to the income, or to the capital, of the residuary portion of the estate.

The terms of the agreement of compromise clearly require that the legacies should be paid in full, with interest at the rate of six per cent., and without any deduction for taxes.   The counsel for Mr. and Mrs. Green admitted at the argument that this was so, and that the first alternative of her claim, as stated in the bill and admitted in her answer, was untenable.   The other alternative of that claim, namely, that the taxes should be paid out of the principal, and not out of the income, of the estate, is not presented by this bill, and has no bearing upon the disposition of this case, either as to the merits or as to the costs.

The question which this bill is brought to determine does not arise out of any ambiguity in the will, nor affect the capital of the estate.   All the expenses of the present litigation have been occasioned by the conduct of Mrs. Green, who, knowing all the facts, made a claim which had no legal or equitable foundation, and which was inconsistent with the express terms of her own written agreement, and which her counsel, very properly, do not now attempt to support.   If she had not made this claim, but had only asserted that the taxes should be paid out of the capital, and not out of the income of the estate, this suit would not have been necessary for the protection of the administrator or the ascertainment of the rights of the other parties in the matters

now before us. The costs and expenses of all parties to this suit must therefore be borne by and paid out of her income of the residue. The case falls within the rule by which courts of equity impose the costs of unnecessary litigation upon the party who has caused it. *Getman* v. *Beardsley*, 2 Johns. Ch. 274. *Macartney* v. *Graham*, 2 Russ. & Myl. 353. *Meader* v. *McCready*, 1 Molloy, 119.                                        *Decree accordingly.*

THE SECOND CASE was a bill in equity, also filed October 4, 1871, by the trustees of the residuary fund under the will of Miss Howland, against Mrs. Green and her husband, praying for instructions whether the United States income tax of $15,570.25, and the local taxes of $59,620.82, described in the bill in the first case, and also a United States legacy tax of $14,628.14, assessed against the administrator, and paid by him in July 1870 under protest, upon the residuary gift to Mrs. Green, which the assessor computed to be equivalent to a cash legacy of $731,407, were chargeable against the capital or the income of the residuary fund in their hands; and also against which of the two the costs and expenses of this suit, and of the suit in this court referred to in the bill in the first case as a suit to establish the so called compromise and supplement, were chargeable. All the allegations of the bill which are material to this report were repetitions of allegations in the bill in the first case. Mrs. Green and her husband answered, admitting the allegations of the plaintiffs, and praying that they might receive the desired instructions; and the case was reserved by *Colt*, J., on the bill and answer, for the determination of the full court, and argued at Boston in January 1872.

*Marston & Crapo*, for Mrs. Green and her husband.

*Stetson*, for the ultimate beneficiaries of the residuary fund.

GRAY, J. This bill directly presents for our decision the question whether the amount of the taxes which have been paid by the executor of the will of Miss Howland, or by his successor, the administrator *de bonis non*, to the assessor of the internal revenue of the United States, and to the cities of New Bedford and Providence under the laws of this Commonwealth and of the State of Rhode Island, and which to the extent thereof have dimin-

ished the trust fund received by the plaintiffs as trustees **under** the will, should be charged to the capital of the estate, or to the income or earnings thereof payable to Mrs. Green.

This question is conclusively answered by the terms of the compromise, agreed on between the parties, and affirmed by the decree of this court at October term 1870.

By the original agreement of compromise, the administrator *de bonis non* was to pay all the particular legacies in full, with interest at the rate of six per cent. annually from the death of the testatrix ; and the plaintiffs as trustees under the will were to take the assets remaining after payment thereof and of the debts and expenses of administration, and divide them into two parts, the first of which should consist of the earnings of the estate since the death of the testatrix and be accounted for to Mrs. Green and her legal representatives, and the second should consist of the balance of such assets and constitute the principal of the trust fund to be retained and kept by them under the provisions of the will. By the supplemental explanatory agreement, it is declared that the first part " is to consist, not of gross earnings, but of earnings less interest on legacies as aforesaid, and, so constituted and ascertained by the trustees, shall, under the provisions of the trust, be accounted for by said trustees to said Hetty H. Green and her legal representatives." We have already decided, upon the bill filed by the administrator for instructions upon that point, that by the terms of the compromise the particular legacies must be paid in full, without any deduction whatever for taxes. *Mandell* v. *Green, ante,* 277. And we are of opinion that the express provisions of the compromise, as clearly defined by the supplemental agreement, requiring the trustees to account to Mrs. Green and her legal representatives for the whole earnings of the estate " less interest on legacies as aforesaid," with equal clearness preclude the inference that any additional deduction is to be made from those earnings on account of taxes assessed on the estate or on any interest therein and paid by the administrator before transferring the assets to the trustees. The amount of all such taxes must therefore be charged to the balance of the assets received by them, constituting the second part, or principal, of the trust fund.

If those taxes were all lawfully assessed and collected, they will so far diminish the principal of the trust fund. If any of them were unlawfully exacted, and should hereafter be recovered back, they will constitute part of that principal. But the question whether they were lawfully or unlawfully assessed and collected, in whole or in part, cannot affect the right of Mrs. Green to receive the whole amount of the earnings to which by the terms of the compromise she is entitled, and need not therefore be further considered.

The twelfth article of the will relates only to taxes and charges laid upon the estate after it has come into the hands of the trustees, and has no application to taxes previously assessed and paid.

The suit in equity to confirm the agreements of compromise concerned the whole estate of the testatrix, and the costs thereof, as well as those of the present suit, like the ordinary expenses of administration, must be borne by the principal fund.

*Decree accordingly.*