WORCESTER CITY MISSIONARY SOCIETY, trustee, *vs.*
MEMORIAL CHURCH & others.

Worcester.   October 4, 1904. — October 18, 1904.

Present: KNOWLTON, C. J., BARKER, HAMMOND, & BRALEY, JJ.

*Charity*, Powers of managers.   *Trust*, Duties of trustee.   *Equity Jurisdiction*, Bill for instructions.   *Equity Pleading and Practice*, Bill, Decree.

Where a will creating a charitable trust gave certain real estate to trustees and provided that they should " suffer and permit" the estate and every part of it to be under the " care, custody and management" of certain deacons, it was held that the legal title only was in the trustees, and that they could not deprive the deacons of their authority as managers of the trust estate.   A similar result was reached as to certain pecuniary bequests to be held and managed by the same persons.

Where a testator gives explicit directions as to the classes of securities in which a trust fund created by his will shall be invested, it is the duty of the trustee to follow the instructions literally.

A testator, bequeathing $20,000 as a charitable trust, directed that it should be invested in certain classes of securities, and provided that the fund should on no condition be reduced below the amount devised.   The net income of the fund was to be expended from year to year toward defraying the expenses of maintaining a minister and public worship.   *Held*, that the trustee was not to allow the fund to be reduced below the sum of $20,000 by any intentional act of diversion, but that, if the fund should fall below that amount, the whole of the net income still should be applied to the designated purposes, and no part of it withheld, even when a loss on a certain investment reasonably might be anticipated.

A question as to the parties to be joined in a bill for instructions is not a proper subject for a prayer in such a bill.

An unnecessary declaration in a statement of findings preceding a decree in equity, although on a matter not properly the subject of .the decree, may not be so irregular as to call for an amendment.

BILL IN EQUITY, filed in the Probate Court for the County of Worcester February 25, 1903, by the trustee under the will of Ichabod Washburn, late of Worcester, for instructions.

In the Probate Court *Forbes*, J. made the following findings and decree :

" That all necessary parties have been joined as respondents to the petition.

" That under the will of Ichabod Washburn certain trusts were established for the benefit of Memorial Church and an Industrial School to be maintained in connection therewith.

" That said trusts were briefly as follows :

" 1. A devise of real estate on Summer Street in Worcester to Union Society of Worcester for a place of public worship for the support of public worship and certain other religious purposes incidental thereto.

" 2. A gift of $20,000, the income of which is to be applied towards defraying expenses of maintaining a Minister and public worship.

" 3. A gift of $5,000 to maintain an Industrial School.

" That Union Society resigned this trust and the City Missionary Society with two representatives chosen by it, have been appointed Trustees in place of Union Society and two deacons of Union Church.

" It is therefore ordered and decreed that by the true and correct interpretation of the clauses as to which the petition is brought :

" 1. The legal title to the Summer Street real estate was vested in Union Society and is now vested in the petitioner as its successor, and that the four deacons had and their successors have exclusive control of said real estate subject to the religious uses set forth in the will and they are to care for the property and to receive and pay out the income accruing from it.

" 2. In regard to the gift of $5,000, for the maintenance of an Industrial School, the naked legal title to the principal was in the Union Society and now is in the petitioner as its successor, while the management and control of the fund and its expenditure are in the hands of the successors to the four deacons as trustees.

" 3. The fund of $20,000 shall be held by the petitioner and managed by the said successors to the four deacons, and that the gift ' to said Trustees ' means that the title to this fund vests in the petitioner as trustee and is to be managed by the successors

to said four deacons in the same manner as the real estate and fund of $5,000.

"4. .The directions in the will as to the investment of the fund of $20,000 should be literally followed by the trustees.

"5. The net income of the fund of $20,000 should be expended from year to year 'towards defraying the expenses of maintaining a Minister and Public Worship' even if the trustees reasonably anticipate a loss to the principal on account of a mortgage loan, the exact value of which cannot now be determined.

"6. The Trustees are not to allow the fund to be reduced below the sum of $20,000 by any intentional act of diversion, but if in fact the fund falls below that amount the net income of the fund is to be expended as above set forth and is not to be held back to make good any anticipated loss of principal."

The plaintiff appealed; and the case came on to be heard before *Hammond,* J., who reserved it upon the bill, answer and other records in the case for determination by the full court.

The material part of the will of Ichabod Washburn was as follows :

"Whereas I have long felt that it was desir*reable* to devise some means by which a pretty numerous class of persons in the City of Worcester who are now living without the benefits of moral and religious instruction and restraint which grows out of an habitual attendance upon the ministrations of the gospel, should be supp*lyed* with opp*ertunities* and inducements to enjoy the same.

"And whereas it has seemed to me that the readiest way of accomplishing this purpose would be to open for the use of all who may be disposed to avail themselves of the same, a suitable and respectable place of worship wherein upon the Lord's Day and at suitable times on week days religious services may be held and conducted by some learned, pious and devoted Christian Minister, who, in addition to preaching and conducting public worship shall devote him*silfe* by visits and personal influence to *pursuading* indu*ccing* such as may be un*acustomed* to attend worship or who neglect the Sabbath or from any cause are destitute of the health*full* restraints and moral influence of religious instructions, to attend upon the services in such place of worship.

" And whereas I have caused such a house to be erected in which the Rev. Henry T. Cheever is now officiating as City Missionary, I have a strong hope of aid hereafter to carry out the design I had in causing said house to be erected.

" Now in order to give consist*ancey* and effect to a plan for accomplishing the purposes and views above named, I give and devise unto the Union Society, a Parish or religious society in Worcester (of which I am now a member) that real estate situate in Worcester at the intersection of Bridge with Summer Street, containing fifty-five hundred square feet of land, viz.: fifty-five feet in front upon Summer Street, and one hundred feet on Bridge Street with the building erected thereon, with all the privil*ages* and app*ertenences* thereto belonging, to have and hold the same to the said Parish or religious society, their successors and assigns forever. In trust, nevertheless, and to and for the purposes and trusts hereinafter declared and no other.

" And in order the more clearly to indicate the character and objects of these trusts, I wish to pre*mise* that the plan I have proposed to ca*ry* out is this:

" First. To have a suitable and respectable place of public worship with convenient accom*odation* for Bible and Sunday School classes, and one or more tenements for the accom*odation* of the Minister and Sexton.

" The Minister to be employed to preach in said house or to be let at a reasonable rent towards keeping the premises insured and in repair and supporting the Minister aforesaid.

" Second. To have a Minister whose religious views shall substantially harmonize with what are denominated to be Evangelical in their character who shall be endowed with respectable powers of intellect and be as faith*full*, pious and devoted lab*ourer* in the work of *teach* and preaching the word of God.

" Third. It is my wish and intention by this bequest to form an important auxiliary in the missionary enterprise of preaching and min*intering* to the destitute in the city, and to those who do not feel sufficient interest in sacred things to attend upon the preaching of other ministers.

" The Trusts, therefore, upon which said estate is to be held by said dev*ises* and trustees are as follows:

" In the first place, That they shall suffer and permit said

estate and every part thereof to be under the care and custod*gy* and management of two of the deacons of the Union Church as shall be designated by said church, and two deacons of the Mission Chapel Church recently organized, and their respective successors for the time being or of a major part of them, and shall allow said four deacons to obtain insurance upon said buildings in the name of said trustees and the said deacons, and to cause the same to be kept constantly insured to a reasonable amount, and in case of loss or damage by fire shall allow said deacons to recover said insurance money, and to apply the same according to their best discretion in repairing or rebuilding said building, as the case may be, in the name of said trustees, but without charge to them and permit said deacons from such insurance or other mon*ies* forever to keep and maintain upon said premises a house of public worship and tenements connected therewith as large and convenient as the same now standing thereon are.

" In the next place, That said trustees shall forever suffer and permit that portion of said premises designed for the purposes of public worship to be occupied at all reasonable and proper times for public worship under the charge and ministration of a Minister of the Gospel who has been regularly ordained or set apart according to the usages of the denomination of Christians with which he may be connected and whose religious sentiments and opinions shall substantially conform to those now gen*nerally* known and understood as Evangelical.

" And further that said trustees shall suffer and permit the parts of said building designed for the use and accommodation of the *sabbath* and Bible classes to be occupied for that purpose at all suitable times under the direction of such minister and deacons or a major part of them.

" And suffer and permit the house to be occupied free from rent or charge by any decent and orderly person who may resort thither for the purpose of attending worship at all times under such reasonable regulations as may be adopted by said deacons and said minister or a major part of them for preserving order and propriety of deportment in said house.

" And suffer and permit the minister selected as aforesaid to occupy and improve so much of the tenement in said building designed for the use of the families as in the judgment of the

deacons shall be reasonably sufficient for his convenience so long as he shall be employed by them as such minister and upon such terms as they shall judge expedient having proper reference to the use of such tenement as a means of support and encouragement of such minister.

" And shall permit said deacons in the name of said trustees to let such other portions of the said estate as they may judge best upon reasonable rents and collect and' apply the same in keeping the premises in repair in paying the contingent expenses in conducting and manag*eing* the same and in causing the same to be insured and appropriate and apply the surplus if any towards the support of the minister.

" And further shall suffer and permit said deacons in the name of said trustees to commence. and carry on to final judgment all necessary and proper suits or actions at law or in equity to enable them to manage and control said estate as hereinbefore expressed, to collect the rents thereof or remove the tenants thereof when the same shall be necessary and generally to do whatever acts or things may be necessary or proper to effect and carry out the true interest and meaning of the trusts aforesaid and accomplish the same.

" And whenever the said deacons or a major part of them shall *shall* with the approbation of the Mission Chapel Church judge it expedient to terminate the engagement of any minister who may have been employed to officiate in said house of public worship it shall be compet*ant* for them so to do and they may thereupon proceed to select another in his stead in *in* manner aforesaid and if approved as aforesaid to employ him accordingly.

" And I further give bequeath and devise unto said trustees the sum ᴀ twenty thousand dollars to be by said trustees invested in the bonds or securities of the United States or of the Commonwealth or of towns within the Commonwealth if such bonds or securities can be obtained for investment, otherwise upon personal notes or bonds secured by a first mortgage of real estate or full and ample value not exceeding one half*e* of its appraised value to render the loan thereon safe and undoubted in no case is any part of the money to be so loaned on personal notes or bonds if the first named class of securities can be obtained.     The fund on no condition to be reduced below the amount devised.

" In the event of the necessity of loaning a part or the whole of said fund on real estate, the appraisal of the same shall be made by three disint*ered* and compet*ant* judges of such estate of which value not more than one half shall consist of buildings thereon, the interest thereon and income thereof, shall be semi-annually collected and applied by said trustee towards defraying the expenses of maint*ain* a minister and public worship as here-inabove expressed or if it shall become necessary may apply the principal toward rebuilding said house if destroyed, nor are said trustees to be held respons*able* for the loss of any part of said princi*ple* or interest provided the same shall be invested and applied by said trustees, nor are they to be subjected to any charge or cost on account of the same nor on account of any suit or action which may be necessary to bring to collect or recover said fund or the interest thereof.

" It is my further direction and devise that there should be kept and maintained in connection with the Mission Chapel aforesaid an Industrial School for children of poor parents in the City of Worcester who in the judgment of said trustees may be fit objects to share in the benefits thereof, said school to be taught on some day or days in the week and devoted to instruc-tion in knit*ing*, sewing mak*eing* garments and such other domes-tic arts as in the judgment of those in charge of the school can be usefully and properly taught in such a school as well as to the inculcation of moral duties, the cultivation of good manners and the social intellectual and moral elevation of its pupil.

" And to enable said trustees to provide a portion of the means for carrying on said school and furnishing if need be to deserving destitute children who may regularly attend said school some parts of their necessary clothing.

" I direct that the sum of five thousand dollars in addition to what I have above given for the purpose of said Chapel be paid to be held and managed by the same persons, as are to hold and manage the trusts in respect to said chapel."

*J. S. Gould,* for the plaintiff.

*C. M. Thayer,* (*C. A. Hamilton* with him,) for the defendants.

KNOWLTON, C. J.   The first question of importance between the plaintiff and the defendants is whether the will gives the plaintiff, as trustee, a right to control the disposition and man-

agement of the property of which it holds the title, or whether the deacons referred to in the will can act independently of the holder of the title in all matters involved in the care, custody and management of the property.  Looking first to the real estate devised, we think it pretty plain that the deacons are to act independently in a relation of trust, in all the matters of which, under the will, they are to have the management.  Although the first statement of the trust under which the plaintiff holds the property, requires the plaintiff to " suffer and permit " the estate " to be under the care custody and management " of the deacons designated, the language is imperative, and gives these deacons authority in the management of the trust estate, of which the corporation cannot deprive them.  Their relation to the scheme of the testator is similar to that of the managers of the library in *Cary Library* v. *Bliss*, 151 Mass. 364, and the selectmen and ministers under the will of Dr. Franklin, as appears in the suit of *Boston* v. *Doyle*, 184 Mass. 373.  As managers they stand in a relation of trust to the property whose legal title is held by another as trustee.

The legacy of $5,000 given for the support of an industrial school, is by the express terms of the will, " to be held and managed by the same persons, as are to hold and manage the trusts in respect to said chapel."  The powers and duties of the deacons in regard to this legacy are similar to their powers and duties in regard to the chapel.  ·

There is more room for doubt about the legacy of $20,000 given to defray " the expenses of maintaining a minister and public worship," and if necessary to be applied " toward rebuilding said house if destroyed."  In making this gift the testator does not in terms refer to the deacons as managers; but this is one of the trusts in respect to the chapel, mentioned in a later clause, and in reference to the methods of management it is there put in the same clause with the devise of the real estate, and is spoken of as held and managed by the same persons.  The close connection of this legacy with the devise of the real estate brings us to the conclusion that the testator intended the three gifts to be held and managed by the same persons.  We are therefore of opinion that the first three propositions embodied in the order and decree of the Probate Court establishing the respective rights of the plaintiff and of the deacons in the three gifts are correct.

It is also plain that the directions in the will as to the investment of the fund of $20,000 should be literally followed by the trustees, as declared in the decree.

The fifth and sixth of the instructions stated in the decree, are also correct. The requirements there stated are just and equitable, and in accordance with the decisions of this court. *Parsons* v. *Winslow*, 16 Mass. 361. *New England Trust Co.* v. *Eaton*, 140 Mass. 532, 534. *Stone* v. *Littlefield*, 151 Mass. 485.

The plaintiff objects to the finding stated in the decree as a preliminary to the substantive parts of the decree, that "the trusts were established for the benefit of Memorial Church and an industrial school to be maintained therewith," and contends that they were established for the benefit of people in Worcester who would enjoy their privileges. Undoubtedly they were established for the benefit of the people; but as the church and the school are public charitable institutions which are acting as agencies in dispensing the charity, it is not incorrect to say that the trusts are for the benefit of these institutions.

The plaintiff, in its bill, asked the court to give instructions as to whether the proper parties were joined in the suit. This is not a proper subject for instructions, but is proper for determination as a part of the procedure in the case. The finding, "That all necessary parties have been joined as respondents to the petition," stated as a preliminary in the decree, is unnecessary; but as it appears before that which is ordered and decreed, it is not so irregular as to call for a change of the decree.

The objection to the fifth instruction is now waived as it is agreed that a loss has occurred.

We perceive no such inconsistency between the present decree and the former decrees of the Probate Court in reference to this trust as should preclude the court from giving these instructions.

*Decree affirmed.*