EBEN D. JORDAN & others, executors & trustees, *vs.* JAMES C. JORDAN.

Suffolk.    March 21, 1906. — June 20, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, BRALEY, & SHELDON, JJ.

*Trust. Capital and Income. Agent,* Commission. *Broker.*

Where an estate of great value, nearly one third of which consists of real property, is held under the provisions of a will by trustees having large discretionary powers as to investments and the management of the estate, in trust to pay the income to certain beneficiaries during a period fixed by the will with a remain-

der over, if the trustees find it expedient from time to time to make extensive alterations in the real property in order to obtain tenants and to render the whole estate productive so that the income can be kept at a fixed standard or increased in amount, the expenses incurred by the trustees in good faith for these purposes properly can be paid out of the income of the estate without charging any part of them to capital, although incidentally the immediate value of the buildings may have been increased by the improvements.

Where an estate of great value, nearly one third of which consists of real property, is held under the provisions of a will by trustees having large discretionary powers as to investments and the management of the estate, in trust to pay the income to certain beneficiaries during a period fixed by the will with a remainder over, and where the testator in his will expressed his high opinion of permanent investments in real estate and suggested to the trustees that before making any sale under the power given them in the will they should fully consider the expediency of doing so, and where also during the existence of the trust the net income of the entire estate has been reasonably adequate for the purposes of the trust and has been paid to the beneficiaries from the time of the testator's death, if the estate includes several parcels of realty left by the testator which have been either entirely unproductive or have not produced sufficient income to pay taxes and the cost of maintenance, although it is the duty of the trustees to convert this unproductive property into a fund that will produce revenue without unnecessary delay, until such conversion they are justified in paying from the general income of the estate all charges necessary in carrying the unproductive realty ; and, if within a period of five years after the death of the testator they sell certain of these unproductive parcels at a profit above the inventory valuations, the proceeds of such sales belong to capital without any deduction in favor of income by reason of delay in the conversion of the property, such delay having been contemplated by the testator.

The rule long settled in this Commonwealth that a commission paid by a trustee to a broker for negotiating a sale of personal property belonging to the trust is to be charged to income and not to capital applies equally to the payment of a broker's commission for negotiating a sale of real estate belonging to the trust.

APPEALS, filed in the Supreme Judicial Court on June 15, 1905, by James C. Jordan, one of the life beneficiaries under the will of Eben D. Jordan, late of Boston, from decrees of the Probate Court for the county of Suffolk allowing the accounts of the trustees under that will.

There were six accounts filed by the trustees, covering the period from November 15, 1895, the date of the death of the testator, to October 30, 1900.

Objections were filed by James C. Jordan, the appellant, to these accounts as well as to accounts filed by the executors. The matter was referred to John C. Gray, Esquire, as auditor, who made a report. Thereafter the matter came before the Probate Court, and the entry of the decrees appealed from was consented

to by the appellant " except in so far as items involved questions as between capital and income."

The appeals came on to be heard before *Braley*, J., who at the request of the parties reserved them on the pleadings (omitting the schedules annexed to the objections), the will, the auditor's report so far as it related to the questions raised by the appeals, a stipulation and a statement of the facts admitted, for determination by the full court, such decrees to be entered as equity and justice might require.

The following facts by agreement were taken as admitted at the argument: The testator's widow survived him, and died in February, 1897. Four children of the testator survived him, and now are living, namely, James C. Jordan, Eben D. Jordan, Jr., Julia M. Dumaresq and Alice M. Foster. No child of the testator died before him leaving issue. The appellant had two daughters of his first marriage, both of whom are living. The testator died seised of vacant lands in Brookline and Boston in addition to the lands in regard to which the questions were raised which are considered in the opinion.

The following provisions of the will relate to the duration and termination of the trust:

". . . And upon the further trust at the end of said period of suspension to pay, transfer and convey to each descendant then living of said James C. Jordan, Eben D. Jordan Junior Julia M. Dumaresq or Alice M. Foster as the case may be for whose benefit a general share or a part of a general share shall then be held in trust under this my will or who has been receiving income from any general share or part of a general share, the general share or the part of the general share itself held in trust for his or her benefit or of which he or she received the income in either case discharged of all trusts. . . .

" And provided further that the words 'son' 'daughter' 'child' 'children ' ' brother ' ' sister' 'issue' 'lawful issue' 'descendant' 'beneficiary' 'heir at law' 'next or nearest of kin' or other word or words wherever used in this will, whether hereinbefore or hereinafter with reference to persons descended from my said son James C. Jordan shall in all cases be taken to refer only to such persons as shall have descended from the said James and his said former wife Helen L. Jordan and in no instance to those

persons, if any, who shall have descended from said James and his present or any other wife except said Helen it being my intention to exclude from sharing in any part of my property whether principal or income any and all children issue or descendants however near or remote of my said son James, except his said daughters by his said former wife Helen L. Jordan and their respective issue and descendants.

"Said period of suspension shall be and continue from the time of my death during the lives of such of my lawful descendants as shall be living at the time of my death and during the lives and life of the survivors and survivors [sic] of them and for twenty years after all of them shall have died, whether such descendants living at the time of my death shall be a child or children and grand child or grand children and great grand child or great grand children and more remote issue of mine, or shall embrace less generations."

The following article of the will is referred to in the opinion as a "cautionary direction":

"Article Twenty-fourth : — I think after a long experience on the subject, very highly of real estate as a permanent investment and I suggest that the executors or executor or administrators or administrator for the time being under this my will and the trustees or trustee for the time being thereunder, fully consider the expediency of making any sale of real estate, under the power given in and by this will, before making sale thereof, but this is only by way of suggestion, and is not in any manner whatsoever to control, lessen, impair or affect the power to sell real estate hereinbefore given in and by this will."

Other portions of the will necessary for a proper understanding of the decision of the court are quoted or described in the opinion, where also other material facts are stated.

*C. K. Cobb*, for the trustees.

*C. E. Rushmore*, (of New York,) (*L. D. Brandeis* with him,) for James C. Jordan, appellant.

*R. F. Sturgis*, for Charles S. Rackemann, guardian *ad litem*.

BRALEY, J. By the will of the testator after devising in article fifth his mansion house to his wife, the residue of the estate consisting of real and personal property to a large amount is given to trustees "in trust to manage and invest the same in

a careful and prudent manner and receive the income therefrom and after deducting and paying from said income all taxes and other charges incident thereto including a reasonable compensation to the trustees . . . to pay to my said wife out of the remainder of said income in case she shall survive me, the yearly sum of twenty-five thousand dollars . . . during the term of her natural life." He then proceeds, subject to this provision, to provide for his four children and their issue, which as to his son James included only the children by his first wife, by further directing the trustees "to divide all said rest residue and remainder of said estates and property . . . into such a number of equal shares that there shall be one share to be held in trust for the benefit" of each of them. Upon such division being made it then becomes the duty of the trustees "to manage such general share in a careful and prudent manner and invest from time to time in a careful and prudent manner such part thereof as may be uninvested and collect and receive the income from such general share and after paying from the income of such general share, all taxes and other charges incident to such general share including a reasonable compensation to the trustees for the time being for their services in respect to such general share, to pay the residue of the income of such general share to the son or daughter of mine for whose benefit such general share is held in trust." But it is further provided if the trustees find it inconvenient this division need not be made, and only his or her proportionate share of the income need be ascertained and paid over to the beneficiary. This course has been followed as the trustees thus far have treated the estate as undivided. In article sixteen their discretionary powers are defined in these words: "Full power and authority are hereby given to the trustees for the time being under any article of this my will to change from time to time the investment or reinvestment of the whole or of any part of the property held in trust by such trustees and for this purpose to sell the whole or any part thereof at public auction or by private sale and for such consideration and on such terms as such trustees . . . shall deem expedient and convey the same by good and sufficient deed or deeds in fee or other transfers or conveyances to the purchaser or purchasers discharged of all trusts and receive the proceeds of such sale, but such proceeds

shall be invested . . . in such other property as they shall deem safe and prudent investments, but to be held upon the same trusts. . . ." A portion of the personalty has been converted into realty by a purchase of the premises described as the " Park Square tract," and by building an apartment house called " Trinity Court," and while three parcels of real property of which he died seised have been sold, the fee in one has been acquired under the foreclosure of a mortgage held by the testator at his death. With these exceptions and the transfer in compliance with a contract of the testator of certain shares of corporate stock out of a large number owned by him, and the liquidation of his interest in the mercantile firm of which he was a member, there appear to have been no substantial changes in the form of the property as received by them. The widow has since deceased, but the children survive, and from time to time the trustees have rendered accounts of their trust in which receipts, expenditures and investments are shown, and while apparently assented to by the other beneficiaries, the appellant, who originally objected to their allowance on many grounds that under the appeal have become eliminated, still contends that the first six accounts should be reformed so that certain sums paid from income should be charged to capital. These objections rest upon two grounds, either that the items now in dispute for repairs, alterations and improvements were of such a permanent character that they should have been so charged, or that if the taxes and maintenance of any separate parcel exceeded the income therefrom, the deficit should not have been finally supplied from the general income, but upon sale of the land should have been taken from principal.

In adapting, after completion, the basement, first story, and other parts of the building erected by them, by providing an elevator, building a stairway, with other minor changes, and furnishing additional equipment of lighting, heating and plumbing, and in remodelling and fitting the third story of another building left by the testator, for the purpose either of securing tenants, or for their accommodation, many changes or improvements were made, some of which it is now contended have been permanent in character. These alterations increased the rental value of the property, and if the total cost both of construction

and equipment, of which these items form only a part, come out of the remaindermen, then as no part of this burden is borne by the beneficiaries for life they would receive a benefit wholly at the expense of those who ultimately would participate in a division of the estate at the determination of the trust. Under the large discretionary powers conferred, the trustees, in the exercise of a sound business administration, might find it expedient from time to time to make extensive alterations in the real property in order to obtain tenants and render the whole estate productive, so that the income could be kept either at a fixed standard or increased in amount. They are found by the auditor to have acted in good faith, and with reasonable judgment in deciding that these changes were advisable. Because of some of these alterations, the buildings may have been intrinsically more valuable than before, and in a certain sense the alterations are permanent in character, but already there has been a partial restoration of one building to its original condition at the expense of capital and what other changes may be reasonably required in the future to obtain and keep tenants cannot of course be anticipated.

In the management of such property details of administration must be left very largely to the sound discretion of those entrusted by the testator with its development as a source of revenue, and, these disbursements having been found justifiable, the apportionment by the trustees so far as it is now in dispute does not appear to have been erroneous. After making an adjustment as to all expenditures which clearly belonged either to capital or income, there remain those in dispute, and these charges though debatable they paid from income. But upon consideration of the principal object sought, which was to retain or increase rental values, no satisfactory reason is shown why these several outlays should not as a whole be treated as being in the nature of occasional repairs or improvements, which did not permanently increase the value of the inheritance, but did enhance income, and to the payment of which capital that already had borne what was plainly deemed its proportional legitimate part should not be made further to contribute. *Sohier* v. *Eldredge*, 103 Mass. 345, 351. *Little* v. *Little*, 161 Mass. 188, 202. This may be said to be in accordance with the

general rule that, in the absence of a different testamentary direction or of an agreement as to apportionment between the tenant for life and the reversioner, ordinarily taxes, insurance, and all incidental expenses of the maintenance of real property, which forms a part of an estate held in trust, whether left by a testator or purchased by the trustees, are to be paid from income. *Parsons* v. *Winslow,* 16 Mass. 361, 368. *Little* v. *Little, ubi supra. Holmes* v. *Taber,* 9 Allen, 246. *New England Trust Co.* v. *Eaton,* 140 Mass. 532. *Plympton* v. *Boston Dispensary,* 106 Mass. 544. *Mandell* v. *Green,* 108 Mass. 277. *Bridge* v. *Bridge,* 146 Mass. 373, 376. The case of *Stone* v. *Littlefield,* 151 Mass. 485, which the appellant suggests supports a different doctrine, is not in conflict. In that case the ordinary rule that taxes should come out of income was not followed, because they had become a lien on the property when the trustee acquired title under the foreclosure of a mortgage taken by the testator, and their payment was necessary before a satisfactory title could be given to the purchaser to whom he afterwards sold. Upon a sale under such conditions capital either receives the benefit of any gain, or must bear the burden of any loss, and the trustee therefore could not at the expense of income retain the amount of the taxes in anticipation that a sale in fee by him would not produce enough to satisfy the mortgage debt with the incidental disbursements. *Worcester City Missionary Society* v. *Memorial Church,* 186 Mass. 531, 539.

Included in the estate were several parcels of realty left by the testator, which taken separately have either been entirely unproductive, or have not produced sufficient income to pay taxes and costs of maintenance, and the trustees have supplied this deficiency from the income received from the remainder of the property. While the two investments in realty made by the trustees need not be considered, as each has yielded sufficient returns to pay taxes and expenses, and the propriety of the purchase of the estate in Park Square is now unquestioned, a sale at a profit above the inventory having been made within a period of five years elapsing after the testator's death of three parcels of the unproductive real estate, an argument also is urgently pressed that out of the proceeds enough should

then have been transferred to income to cover any loss occasioned by this delay. It is settled that trustees without unnecessary delay are to convert unproductive property received from a testator into a fund which will produce revenue, and when so created the right of the life tenant to the income is to be ascertained, and the income computed from the time of the testator's death. *Edwards* v. *Edwards*, 183 Mass. 581, 583, and cases cited. In that case on which the appellant strongly relies the testator directed that his property, the bulk of which consisted of unproductive land, and of speculative investments in stocks carried on margins, should be converted into sound securities, and after paying a small annuity to his son and daughter-in-law the remainder of the income was to go to his wife for life. It is obvious that his sole purpose was to create a permanent fund safely invested, the returns from which should be immediately available for their support. But in the present case the life tenants were not dependent upon the testator, and the scheme of the will plainly indicates that he anticipated that the establishment of the trust fund even before any division into shares became advisable might be prolonged in time. The trustees were not required to divide the estate, which was not only of great value, but nearly one third of which consisted of real property, into " separate and distinct shares " if such division was found inconvenient or inexpedient. If this was not done, the testator's direction was, " then so long as it shall not be necessary to actually divide the same to hold the same in undivided general shares," which included these particular investments made by the testator. The cautionary direction found in the twenty-fourth article of his will, while not absolutely binding upon them, is indicative that he contemplated that his trustees if they followed his judgment might delay the conversion. *Harvard College* v. *Amory*, 9 Pick. 446, 462. If they adopted this course then their action was in accordance with his suggested intention, and when any of these parcels were converted into money the life tenants were not entitled to have any part of the proceeds treated as income and deducted before the whole fell into principal, for being in receipt of the net income from the entire trust as constituted by him, which is not only shown to have been reasonably adequate, but has been paid to them from the

time of his death, they were realizing all the benefit therefrom which he intended, even if a part of the estate during this time remained barren. *Lovering* v. *Minot,* 9 Cush. 151, 158. *Eldredge* v. *Heard,* 106 Mass. 579. *Green* v. *Crapo,* 181 Mass. 55. *Edwards* v. *Edwards, ubi supra.*

A further objection is taken to the payment from income of a broker's commission for negotiating the sale of a parcel of improved realty, but there would seem to be no difference in principle between such a sale, and a similar method of disposing of personalty by trustees, where it has been held that such an appropriation from income was authorized. *Heard* v. *Eldredge,* 109 Mass. 258. If the question were open, objections which perhaps could be soundly urged against this rule would call for careful examination, but the rule has been so long settled, and presumably followed by trustees, that it ought not to be disturbed. See *New England Trust Co.* v. *Eaton,* 140 Mass. 532, 545.

Decrees are to be entered affirming the decrees of the Probate Court.

*Ordered accordingly.*