## KOHLER & CHASE et al. v. UNITED AMERICAN LINES, Inc., et al.

District Court, S. D. New York.

July 24, 1934.

See, also, 46 F.(2d) 178; 60 F.(2d) 530.

Hunt, Hill & Betts, of New York City (John W. Crandall, of New York City, of counsel), for plaintiffs.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Roscoe H. Hupper and William J. Dean, both of New York City, of counsel), for defendant United American Lines, Inc.

Douglass C. Lawrence, of New York City (Sawyer Thompson, of New York City, of counsel), for defendants Frank B. Hall & Co., Inc., and Monks, Goodwin & Shaw, Inc.

PATTERSON, District Judge.

The plaintiffs have moved to confirm the report of a special master and to overrule exceptions filed by the defendants.

The facts are stated in detail in the report. The plaintiffs were owners of certain cargo on the steamship Sudbury. Their goods were damaged as the result of a fire while in transit. General average agreements were signed, and the defendants undertook to act as trustees of the general average fund. An adjustment in general average was completed, and payments were made to all owners of cargo who had given average guaranties, except to the plaintiffs, who claimed that the adjustment was improper. Certain creditors in small amounts who had given no guaranties were also not paid. Thereafter the plaintiffs brought this suit in equity, alleging that the adjustment was improper and irregular on a number of grounds, and demanding that a proper adjustment of the losses and contributions of all interests be made. A suit in admiralty seeking the same relief was filed at the same time, and the two causes were heard together. The result of the litigation was a total defeat to the plaintiffs. Wharton Poor, to whom the issues were referred as special master, reported that the plaintiffs had failed to show that they were entitled to any greater allowances than those shown to be due them under the average adjustment. That amount was some $23,000, whereas the plaintiffs claimed about $27,000. The report was confirmed (Kohler & Chase v. United American Lines (D. C.) 60 F.(2d) 530), and no appeal was taken.

Petitions were then filed in the cause by the defendants for payment, out of the trust fund, of the legal expenses incurred by them as trustees. The expenses referred to were for services of lawyers in defending the trustees in these two cases, and also in prosecuting four suits by the trustees against general average debtors and against an insurance company which had guaranteed the contributions of such debtors. It appeared that this insurance company was the real party in the interest opposed to the trustees in all six suits. The attorneys' bills did not show what the charge was in connection with each suit, but carried aggregate amounts for services in all six suits.

The issues raised by the trustees' petitions were also referred to Mr. Poor. He has now reported that the trustees are entitled to have their legal expenses paid out of the fund; that the amounts of the bills submitted by their attorneys for services are reasonable and proper; and that the expenses are a charge against the entire fund, rather than against only that part to which the plaintiffs are entitled. In connection with this last conclusion, the master held that the plaintiffs were not guilty of "fraud, bad faith or their equivalents" in commencing the litigation. On this point he said that the litigation "was brought in good faith and raised some novel points, the solution of which was not a foregone conclusion." He also found that there had been no laches on the plaintiffs' part to the injury of the defendants. The plaintiffs are content with the report. The defendants except to it on the ground that their legal expenses should have been charged against the plaintiffs' share of the fund. They make no contention, however, that the master erred in holding that the suits were brought by the plaintiffs in good faith.

I am of opinion that the special master reached the correct conclusion, and that his report should be confirmed.

■ The attorneys for the trustees performed services in two directions. They brought suits against general average debtors, and they resisted suits brought by general average creditors. To the extent that their services were for collecting contributions from debtors to the fund, there can be no fair question that the expense must be borne by the trust fund as a whole. The fact that the conduct of these general average debtors in resisting payment was controlled by the same insurance company that was interested in the plaintiffs' recovery out of the fund is of no legal significance.

As for legal services performed in successfully defending the trustees against attacks on their administration of the trust, the matter is not so plain. It is argued by the defendants, and with some force, that such expenses should be paid altogether out of the share of those beneficiaries who commenced the litigation and caused the outlay. But courts of equity in their administration of trusts have never gone so far.

■ It is a general rule that the expenses of trustees in proper discharge of their trust are a charge on the fund as a whole. Rude v. Buchhater, 286 U. S. 451, 461, 52 S. Ct. 605, 76 L. Ed. 1221. Jessup v. Smith, 223 N. Y. 203, 119 N. E. 403. But where one of several beneficiaries brings a groundless suit against the trustee, the latter's expenses in defending are cast on the share of the beneficiary who perversely brought the suit rather than on the estate generally. Patterson v. Northern Trust Co., 286 Ill. 564, 122 N. E. 55; Mandell v. Green, 108 Mass. 277; Getman v. Beardsley, 2 Johns. Ch. (N. Y.) 274; Matter of Ungrich, 201 N. Y. 415, 94 N. E. 999; Perry on Trusts, § 903a. In these cases emphasis was laid on the fact that the suit was vexatious, without reasonable foundation. The implication is that in cases where the suit is brought in good faith and on rational grounds, the trustee's expenses in defense will not be fastened on the share of the objecting beneficiary alone, but will be paid out of the estate as a whole.

■ By tacit concession, the plaintiffs commenced these suits in good faith. The special master took the view that although they were defeated, their case was not one without fair chance of success. Several of the points raised by them, if sustained, would have benefited other general average creditors as well as themselves. Under the circumstances, the special master was right in refusing to charge the entire expense of the trustees in defending on the plaintiffs' proportionate share of the fund.

■ There is no merit in the further contention that the trustees altered their position by paying out the greater part of the fund to other general average creditors before suit brought. They had notice all along of the position taken by the plaintiffs, and they had foresight enough to preserve their rights against recipients of payments by retaining the guaranties.

The defendants' exceptions will be overruled, and the report confirmed.