## BRUCE B. BARNEY *et al.*

### *v.*

## THE BOARD OF COMMISSIONERS OF LINCOLN PARK.

*Opinion filed June 16, 1903.*

1. PRACTICE—*when master's report of facts is not conclusive though no objections are filed.* The master's report is not conclusive as to its findings of fact although no objections are filed thereto, where exceptions are filed in court to such report, both as to questions of fact and conclusions of law, which are sustained by the chancellor, whose attention was not called to the absence of objections to the report before the master.

2. APPEALS AND ERRORS—*objections which may be cured must be made in apt time.* Objections which may be cured by amendment or otherwise must be made in apt time in the trial court or they will be waived.

3. CONTRACTS—*when a contract creates a permanent interest in land.* An agreement between a land owner and park commissioners that the latter should take possession of the land for park purposes and improve and perpetually hold and enjoy the same, transfers to such commissioners, for park purposes, a permanent interest in the land, which cannot be divested except by showing an abandonment or diversion of the contemplated use of the land.

4. SAME—*when contract cannot be revoked by conveyance.* A contract transferring land to park commissioners to improve for park purposes, which improvement will enhance the value of other lands owned by the donor, cannot be revoked by subsequent conveyance of the donor's interest therein, where the commissioners had taken possession of the land and were proceeding with the improvement in good faith and with reasonable dispatch.

5. ESTOPPEL—*when a party is estopped to claim property free from public burden.* One purchasing property with knowledge that it is burdened with a public use and that other parties have purchased abutting property with reference to such use, is estopped to claim such property freed from the public burden.

6. PARKS—*power of park commissioners to take interest in land.* Under the Park act of 1879, as amended in 1881, (Laws of 1881, p. 116,) park commissioners are empowered to receive grants of real estate for the purpose of establishing driveways and for other purposes specified therein.

APPEAL from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

This is a bill in chancery filed by Bruce B. Barney on the 28th day of June, 1899, in the superior court of Cook county, against Ernest W. Bock, for the partition of certain real estate situated in the city of Chicago, fronting upon Lake Michigan and located east of Lincoln Park boulevard and north of Oak street extended, and which is designated as "park property" upon the following plat:

It was alleged that Barney was the owner of the undivided nine-tenths of the property and Bock the owner of the undivided one-tenth thereof.   The Lincoln Park commissioners were made defendants, and it was sought to obtain a decree quieting the title to said premises in Barney and Bock against said park commissioners, who claimed to have an interest in said premises and to be in possession thereof, with the right to hold and enjoy the same for park purposes, under the following agreement with Caroline McCagg, which was filed for record and recorded in the recorder's office of Cook county on January 19, 1898:

"This indenture, made this twenty-first day of December, 1891, between Caroline McCagg, of the city of Chicago, county of Cook and State of Illinois, the first party, and William C. Goudy, Joseph Stockton, Horatio N. May, Andrew E. Leicht and John Worthy, as commissioners of Lincoln Park, the second party:

"*Witnesseth:* That whereas, by virtue of the powers on them conferred by an act of the legislature of the State of Illinois entitled 'An act enabling park commissioners having control of any boulevard or driveway bordering upon any public waters in this State to extend the same,' which act went into effect July 1, 1899, the second party have determined to extend the boulevard or driveway known as the Lake Shore drive, in the town of North Chicago, in the city of Chicago, which boulevard or driveway is a portion of Lincoln Park and is under the control of the first party, and is a boulevard or driveway bordering on the waters of Lake Michigan, such extension to be from near Bellevue place southerly and easterly to the north line of Indiana street extended over lands now covered by the waters of Lake Michigan, and have prepared a plan of such proposed extension, which plan is now on file in their office in the city of Chicago, reference thereto being herein had; and whereas the first party is the owner of that part of lot twenty-one (21) except the

north sixteen and two-thirds (16⅔) feet thereof east of the west one hundred and thirty (130) feet in the subdivision of the south one-half (½) of block seven (7), in canal commissioners' subdivision of the south fractional quarter of section three (3), township thirty-nine (39), north, range fourteen (14), east of third principal meridian, opposite which premises a portion of the above extension lies.

"Now, therefore, the first party, in consideration of the sum of one dollar in hand paid, the receipt of which is hereby acknowledged, hereby grants leave, permission and license unto the second party, and their successors in office, to construct the above· extension according to the above plan, and to forever occupy the land covered by the said extension for the purpose of such extension, and in the manner and to the extent shown on the above plan, and to forever occupy the enclosed space and premises lying between the east line of Pine street extended north and the new boulevard or driveway so to be continued, and the center line of Oak street, as a portion of Lincoln Park.

"This agreement is made on the following conditions:

"*First*—That said boulevard or driveway as continued shall be kept and maintained by said commissioners of Lincoln Park as a part of said park, to be forever used solely for the purpose of a boulevard or driveway under the management and direction of the said commissioners of Lincoln Park, and for no other purpose whatever; and that Pine street shall be continued north so as to fall into said boulevard or driveway as continued.

"*Second*—That the enclosed space and premises lying between the east line of Pine street as so continued and the new boulevard or driveway so to be continued on said curve, and the center line of Oak street, shall be, as soon as enclosed, filled to the line of the present Lake Shore drive, and be henceforth forever maintained as a part of Lincoln Park, under the direction of the commissioners of Lincoln Park, and used solely as a park, and

that no buildings shall be erected or placed or permitted thereon, and that no obstruction, other than trees and shrubbery, shall ever be placed thereon.

"In witness whereof the first party has hereunto set her hand and seal the day and year first above written.

CAROLINE McCAGG.   [Seal.]"

Ernest W. Bock made default, and the park commissioners having answered the bill and a replication having been filed, the case was referred to a master in chancery to take proofs and report his conclusions.  After hearing the evidence the master prepared his report and notified the solicitors of the respective parties of that fact, and that they could file objections thereto on or before May 7, 1901, if they desired so to do.  No objections having been filed, the master's report was filed in court on May 10, 1901.  The master found that Barney and Bock were the owners of the premises in fee simple and that the Lincoln Park commissioners had no interest therein, and recommended that a decree be entered in accordance with the prayer of the bill.  The Lincoln Park commissioners filed exceptions to the master's report, both as to findings of fact and conclusions of law, which the court sustained and entered a decree dismissing the bill for want of equity, and Barney and Bock have prosecuted this appeal.

It appears from the pleadings, proofs and master's report that in accordance with the provisions of an act of the legislature entitled "An act to enable park commissioners having control of any boulevard or driveway bordering upon any public waters in this State to extend the same," which went into effect July 1, 1889, (Laws of 1889, p. 212,) the Lincoln Park commissioners determined to extend the boulevard known as Lake Shore drive, in the town of North Chicago, which was a part of Lincoln Park, into Lake Michigan, so as to include between said drive, as extended, and the then shore line of Lake Michigan, about ninety-three acres, which was to be filled in,

and when re-claimed was to be conveyed to the abutting owners at $100 per front foot upon the Lake Shore drive, and the fund thus derived was to be used by the park commissioners in constructing the new drive. At the time said plan was formulated and agreements made with the other abutting owners upon the lake shore, the agreement hereinbefore set forth between the park commissioners and Caroline McCagg was entered into. In the month of May, 1892, Caroline McCagg sold and conveyed by warranty deed, the title being taken in the name of Henry N. Cooper, for the consideration of $90,000, the property abutting upon the riparian property covered by the agreement which before that time had been entered into between her and the park commissioners, to Henry N. Cooper, Charles FitzSimons and Samuel M. Parker, who were largely interested in the extension of the Lake Shore drive, whereby lands owned by them were to be re-claimed from Lake Michigan, and at the same time and by the same instrument Caroline McCagg quit-claimed to Cooper, for the benefit of Cooper, FitzSimons and Parker, all her interest, if any, in the property covered by her agreement with the Lincoln Park commissioners. The property in question was thereafter levied upon by George E. Gross, a judgment creditor of Cooper, and in October, 1897, was sold at execution sale for $500. Afterwards a deficiency decree for $7700.65 was obtained by Sidney S. Date against Cooper in a foreclosure suit, and by an agreement between Parker and Barney that Parker was to participate in whatever sum might be realized should Barney get title thereto from a re-sale of the property, said deficiency decree was assigned to Barney, a redemption from the Gross sale was effected, and the land was re-sold to satisfy said deficiency decree and purchased by Barney for $8367.69, upon which sale he thereafter obtained a sheriff's deed. Afterwards he conveyed to Bock, a clerk in his office, a one-tenth interest therein, and this bill was then filed.

The appellants claim the decree should be reversed for the following reasons: First, the agreement between Caroline McCagg and the Lincoln Park commissioners amounted to no more than a license, and was subject to revocation by her; second, the conveyance to Henry N. Cooper by Caroline McCagg, subsequent to the execution of said agreement, amounted to a revocation thereof; third, if said agreement was not revoked by the conveyance to Cooper, the Lincoln Park commissioners are estopped from claiming possession of the premises by reason of their failure to improve the same in accordance with their agreement with Caroline McCagg; fourth, the Lincoln Park commissioners, under the act of 1889, were powerless to accept and hold the property attempted to be acquired by them from Caroline McCagg.

L. D. THOMAN, and W. S. OPPENHEIM, for appellants.

FRANK HAMLIN, for appellees.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

A preliminary question is raised by the appellants as to the effect of the findings of fact by the master. No objections to his report having been filed with the master, the contention is made that the findings of fact by the master, for want of such objections, were binding upon the chancellor and binding upon this court. The general rule is, that where no objections are filed to the master's report the findings of fact of the master are conclusive. (*Cheltenham Improvement Co.* v. *Whitehead*, 128 Ill. 279; *Gehrke* v. *Gehrke*, 190 id. 166.) We are of the opinion, however, when exceptions are filed in court to the master's report, both as to questions of fact and conclusions of law, and they are heard by the chancellor and sustained, the attention of the chancellor not having been called to the fact that no objections were made to the report before the master, that the fact that no ob-

jections were made to the report before the master will be deemed to have been waived, and that the question of the lack of such objections cannot be raised in this court for the first time. Had that question been raised in apt time in the court below, the case could have been re-referred and the defect in the record cured. An objection that can be cured must be made in the lower court in apt time, otherwise it will be deemed to have been waived, (*National Bank of Lawrence County* v. *LeMoyne*, 127 Ill. 253,) as the rule is of general application that where a party fails to object in apt time but acquiesces in his adversary's mode of conducting a case, he will not be permitted to make an objection for the first time in this court which he failed to make at the proper time below. *Kankakee and Illinois River Railroad Co.* v. *Chester*, 62 Ill. 235.

The agreement between Caroline McCagg and the Lincoln Park commissioners provided, in substance, that the park commissioners should take possession of said premises for park purposes, improve the same and perpetually hold and enjoy the same. We construe said agreement to transfer a permanent interest in the premises covered thereby to the Lincoln Park commissioners for park purposes, which interest can only be taken from them upon the fact being shown that the use of the premises for the purposes for which they were transferred has been abandoned by the park commissioners or the use thereof diverted from the purposes of the original grant, neither of which conditions of fact is made to appear by the evidence found in this record. Neither can it be held that the right to use the premises conferred upon the park commissioners by said agreement was revoked by the conveyance to Cooper, or otherwise. While the consideration named in the agreement was one dollar, it is apparent that the extension of the Lake Shore drive, the reclaiming of said property from overflow, and the maintenance of a park thereon, at the expense of the park commissioners, free from obstruction other

than trees and shrubbery, in front of the property abut-
ting thereon, which was retained by Caroline McCagg,
would be of great value to her by the enhanced value
which the proposed improvement would add to her prop-
erty, and to permit the rights of the park commissioners
acquired under said agreement to be arbitrarily destroyed
by her or her grantees would be clearly inequitable and
unjust.   It appears that the park commissioners took
immediate possession of the property sought to be im-
proved, including the property in question, so far as
property designed for park purposes, similarly situated,
could be taken possession of, and from aught that ap-
pears in this record, at the time of the commencement
of this suit they were proceeding in good faith, with rea-
sonable dispatch, to complete the extension of the Lake
Shore drive and improve said property in accordance
with their original plans, and in that state of case a court
of equity ought not to permit the rights acquired in said
property by the park commissioners to be summarily
terminated by Caroline McCagg or her grantees.   (*Wil-
loughby* v. *Lawrence*, 116 Ill. 11.)   We are also of opinion,
even though it be conceded that the park commissioners
had no power, under the act of 1889, to acquire said lands
from Caroline McCagg for park purposes, that by virtue
of the act of May 31, 1879, as amended July 1, 1881, (Laws
of 1881, p. 116,) which provides that "real and personal
property may be granted, bequeathed, devised or con-
veyed to such commissioners for the purposes of the
establishment of any driveway, connected or proposed
to be connected, either directly or by means of a public
highway or street, with such park, or for the extension,
improvement or ornamentation of such park or drive-
way," the park commissioners had ample authority and
full power to acquire and hold said property for the pur-
poses for which the same was conveyed to them by Caro-
line McCagg.   Furthermore, it appears that the land
which was re-claimed from the waters of Lake Michigan

was platted and sold by the parties interested therein, with an understanding with the purchasers of said lots that the premises in question should be set aside and maintained by the park commissioners for park purposes, and that Samuel M. Parker made sale of lots to various purchasers upon such representations, and that the rights acquired by Barney and Bock in the premises, if any, were acquired burdened with such public use, as George E. Gross had full notice that said premises had been dedicated to park purposes at the time he recovered judgment against Cooper, and the agreement between Caroline McCagg and the park commissioners was of record at the time the deficiency decree of Date was entered, through which judgment and decree Barney and Bock claim title, and they having derived title to said premises with knowledge that said premises were dedicated to said public use and purchasers of lots having purchased their property with reference to such public use, they are estopped from claiming said property freed from such public burden. *Woollacott* v. *City of Chicago,* 187 Ill. 504; *Eisendrath & Co.* v. *City of Chicago,* 192 id. 320; *Russell* v. *City of Lincoln,* 200 id. 511.

We find no reversible error in this record. The decree of the superior court will therefore be affirmed.

*Decree affirmed.*