AMELIA KLEKAMP, Appellee, *vs.* ROBERT H. KLEKAMP, Appellant.

*Opinion filed October 24, 1916.*

1. APPEALS AND ERRORS—*when decree will not be disturbed by Supreme Court.* Where the finding and conclusions of the master are confirmed by the chancellor and it does not appear in the record that such conclusions are against the weight of the evidence the decree will not be disturbed by the Supreme Court on the facts.

2. DIVORCE—*defense of condonation must be pleaded or set up in answer—burden of proof.* In a divorce suit on the ground of cruelty and habitual drunkenness, the defense of condonation, to be made available to the defendant, must be pleaded or set up in his answer, and while the court has power and discretion to dismiss the bill if it appears that the complainant has cohabited with the defendant after the bill was filed, even though such defense is not properly pleaded, yet, in any event, the burden of proof is on the defendant to establish such defense by a preponderance of the evidence.

3. SAME—*when defendant is deemed to have waived defense of adultery.* Although the evidence may show that the complainant was guilty of adultery, yet if the master's report is silent on that question and the defendant makes no objection to the omission to make a finding on that issue so as to have it cured by a re-reference to the master, the defendant will be deemed to have waived the question in the Supreme Court.

4. SAME—*adultery, if condoned, cannot be made a defense to divorce suit.* Although the complainant is guilty of adultery the offense is completely condoned if the defendant lives and cohabits with her for ten years thereafter with knowledge of the facts, and the defendant cannot avail himself of such acts either as a cause for divorce or of recrimination.

5. SAME—*recriminatory charge of adultery cannot be urged by one who connives at the offense.* The defendant in a divorce suit cannot avail himself of the recriminatory charge of adultery as a defense where the act was connived at by him when committed.

6. SAME—*abuse of court's discretion in allowing alimony pendente lite or solicitor's fees is subject to review.* Whether or not an allowance should be made to a wife for alimony *pendente lite* and for solicitor's fees rests largely in the discretion of the court, but an abuse of such discretion is subject to review.

7. SAME—*when wife should not be allowed her solicitor's fees in a divorce suit.*  The court may require the husband to pay the wife such sums of money as may enable her to maintain or defend her suit, and by statute she is entitled to alimony during the pendency of the suit "when it is just and equitable," but she should not be allowed solicitor's fees when she is amply able to pay them herself and much more able financially to do so than her husband.

8. MASTERS IN CHANCERY—*the master's compensation per diem should not equal or exceed the chancellor's.*  A master in chancery is entitled to only such fees as are specified in the statute, and in Cook county, for reporting conclusions of law and fact, he is entitled to such compensation as the court may deem just; but his position and responsibility are inferior to those of the chancellor, and his *per diem* compensation should not, in any event, be equal to or exceed the compensation of the chancellor when reduced to a *per diem* basis.

9. SAME—*rate of expense of maintaining office should not be considered in allowing master's fees.*  The rate of expense per day for maintaining the master's office should not be considered by the court in allowing the master's fees in a particular case.

APPEAL from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

J. MARION MILLER, for appellant.

WILLIAM B. MOAK, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Amelia Klekamp filed her bill for divorce in the circuit court of Cook county March 10, 1914, against Robert H. Klekamp, appellant, alleging that she was lawfully married to him March 17, 1896.  She charged him in her bill with extreme and repeated cruelty from a short time after their marriage until the filing of the bill and with habitual drunkenness for the five years last past, and prayed for divorce, alimony and the adjustment of their property rights.  Appellant answered the bill, denying every allegation thereof except that of marriage.  On May 16, 1914, the court entered an order that appellant pay appellee $6 per week, be-

ginning May 21, 1914, as temporary alimony and $40 as solicitor's fees, in equal payments in thirty and sixty days. On July 14 following, appellee left the jurisdiction of the court on a trip to Europe, and an order was entered by the court suspending the payment of alimony *pendente lite* until her return and appointing the appellant receiver to take charge of her property at 3328 West Congress street, Chicago, and to collect the rents for the same. Upon her return from Europe appellee presented her motion for appellant to pay her the alimony and solicitor's fees withheld by him and to turn over to her the key to said premises, together with the rents thereof collected by him. By agreement said matters, including the amount of solicitor's fees to be paid appellee's solicitor, were referred to a master in chancery to take the evidence and report his conclusions thereon, including the questions at issue on the pleadings. While the evidence was being taken, appellee, by leave of court, amended her bill by adding the further allegation that while she had lived with him in the same house up to the filing of her bill, yet she had not cohabited with him for the last four years of that time. Appellant denied that allegation in his amended answer and averred that they had lived and cohabited together as man and wife at all times during their marriage and until three or four days after the beginning of this suit, and also charged her with adultery during their marriage. The master in chancery found him guilty of both charges in the bill and recommended that appellee be granted a divorce, and that the said three-flat building at 3328 West Congress street be decreed to be her property free of any claim of appellant, as receiver or otherwise; that appellant convey to her the two-flat building at 506 South Homan avenue, and that he pay to her $218 accrued alimony *pendente lite* and all costs of suit. He also found that if said two flat-buildings are decreed to be hers free from all claims of appellant and said sum of $218 paid her she will be able to

support herself and pay her own solicitor's fees, and he recommended that the defendant be not required to pay any further alimony or solicitor's fees than as above mentioned, except such as may be deemed to be reasonable solicitor's fees for appellee's counsel in case of appeal to a higher court. Objections were filed to the master's report by appellant, and being overruled were ordered by the chancellor to stand as exceptions, and the court decreed that the said two lots and buildings be decreed to be appellee's property, and that appellant convey to her said property known as 506 South Homan avenue and pay to her said sum of money as alimony *pendente lite* and costs, including the sum of $447.50 as master's fees, and that he shall pay such further sum as the court shall deem proper if he shall remove this cause to a higher court for review.

It is argued by appellant as a ground for the reversal of the decree that the findings of the master and the decree of the circuit court are contrary to both the law and the evidence in the case. Upon the charge of cruelty the appellee testified, in substance, that about eighteen months after their marriage appellant struck her "right and left in the face," and that about a month later he struck and felled her to the floor and bursted the drum of her ear; that about five months after that, at 99 West Harrison street, he broke a dining room chair on her back, and that in 1907, at their home, he got angry with her about the supper she had prepared and grabbed her and threw her over the banisters into the yard and injured her back and stomach so that she was obliged to go to the hospital for treatment. She also enumerated various other times in which she claimed he struck and kicked and beat her, the last time being shortly before she filed her bill, and she testified that at one of those times he struck her with a two-by-four piece of timber, and that only a few of those occurrences were witnessed by any other person. Appellant denied *in toto* every specific act of beating or striking appellee testified to

by her except one act which took place in the presence of Agnes Lammerer, an associate and intimate friend of appellee, and he testified that on that occasion he merely put his hand or fist to her mouth and told her to shut her mouth, because she was using such vile language. Mrs. Lammerer corroborates appellee, and testified that at a large gathering of people at witness' house he "licked her," striking her over the head with his hand, and that she did not know why he did it; that at another time she saw him strike her in the face with his hand, and that at still another time appellee came to her bleeding and having the appearance of having been beaten, and on inquiry appellee told her appellant had "licked her in the saloon at 21 Halsted street." Appellee was also corroborated to some extent by Elizabeth Heinnamann, who testified that she had heard appellant apply vile epithets to appellee, and that he told her he had beaten appellee and "had thrown her down the porch." Carrie Regan heard appellant and appellee quarreling but could not understand their words, and Olga McKenna testified that she was at their house once when they quarreled and he got a knife out of a kitchen drawer and told her he would cut her throat. The proof clearly shows that repeated and numerous acts of cruelty were committed against appellee as charged in her bill, and while the evidence is very conflicting on the question of habitual drunkenness, the evidence also sustains the court's findings on that issue. Appellee was shown to have made some statements as to her physical condition and as to whether or not her former husband beat or struck her that were contradicted squarely by her evidence in her former divorce suit, but appellant is also squarely contradicted by other witnesses on matters material to the issues in the case. The findings and conclusions of the master upon those questions having been confirmed by the chancellor, and it not appearing in the record that such conclusions are manifestly against the weight of the evidence, the decree should not be disturbed by this

court. *Champion* v. *McCarthy,* 228 Ill. 87; *Day* v. *Wright,* 233 id. 218.

It is also urged that the acts of cruelty and habitual drunkenness, if committed, were condoned by the appellee. The appellant in his answer merely denied the charges of cruelty and habitual drunkenness without pleading condonation. Such a defense, to be made available to appellant, should have been pleaded or set up in his answer. (7 Ency. of Pl. & Pr. 91.) Appellant testified that he lived with appellee, slept in the same bed and cohabited with her up to and for three or four days after her bill for divorce was filed. Appellee positively contradicted his evidence in that regard, and testified that she had not lived and cohabited with him after the filing of her bill and had not cohabited with him for the last three or four years prior to the beginning of this suit. That is all the evidence bearing on that question. While it was in the power and discretion of the court to dismiss appellee's bill if it appeared that she had cohabited with him after her bill was filed, without regard to the question whether or not such defense was properly pleaded by appellant, yet the court would have been warranted in not allowing appellant to make such defense without having pleaded or averred it in his answer. But, in any event, such a defense is an affirmative one, and the burden of proof was on appellant to establish it by a preponderance of the evidence, and for the reasons above given this court cannot say that the finding of the chancellor is against the manifest weight of the evidence, and we are, in fact, entirely satisfied that appellant failed to establish that defense by the greater weight of the evidence.

It is next urged that the decree of the court should not be sustained because the evidence shows that appellee was guilty of adultery. The master's report was silent on that question, and no objection was filed to his omission to make a finding on that issue of fact. Had it been called to the attention of the court by proper objections and exceptions

the omission could easily have been cured by a re-reference to the master for a specific finding on that issue. Failing to raise the question in the trial court appellant must be deemed to have waived it in this court. (*Barney v. Commissioners of Lincoln Park,* 203 Ill. 397.) But if all the facts bearing on that question had been reported by the master and a finding thereon made by him, appellant could not avail himself of such a defense, because all acts of adultery were completely condoned by him and were connived at by him when committed, as clearly shown by the evidence. The evidence shows that appellee was keeping an assignation house when appellant married her and that he knew it, and that by his own consent she was to, and did, continue in that business until they could accumulate thereby enough money to keep them through their advanced years, and that she did so continue it for about five years and ceased to do so thereafter. The witness Dora Freeman, who is a confessed prostitute, testified that during that five years, or a portion thereof, she was an inmate of such assignation house and that appellant brought or sent men to her for the purpose of prostitution and collected money from her received by her in that business, and she also testified that during that time appellee had gone to bed with other men "right before Mr. Klekamp." If she is worthy of belief at all her whole story should be considered. Her testimony is all the evidence of adultery on appellee's part. Appellant denied knowledge thereof or of the fact that appellee kept a house of assignation, but it is clearly proved that she did keep such a house and that he found her there just ten days before he married her. If guilty of the charge the offense was completely condoned by his living and cohabiting with her for ten years thereafter with knowledge of the facts, and he cannot avail himself of such act either as a cause for divorce or of recrimination. (*Davis v. Davis,* 20 Am. & Eng. Ann. Cas. 20; *Duberstein v. Duberstein,* 171 Ill. 133.) It is also the rule that the recriminatory

charge of adultery cannot be urged by one who has connived at the offense.

Appellant further complains that the decree is erroneous in granting to appellee the large amount of property and money aforesaid. The master in chancery found, in substance, that appellee at the time of the marriage possessed notes and mortgages and a bank account of the aggregate value of $8000, and that the store and assignation house that she was running yielded her a net profit of $100 per month or more; that she bought the lot known as 3328 West Congress street for $1150 and furnished the money that built the three-flat building thereon,—more than $6000,—and that the title has remained and is now in her; that the lot on Homan avenue was bought for $1000 with her money and the title taken in her name and that the two-flat building built thereon was built almost entirely with her money, and that in 1907, while she was in a hospital and her life despaired of, at appellant's persuasion she deeded him that property under his promise to not record the deed and to re-convey it to her if she recovered from her threatened malady; that he failed to keep his promise and had the deed recorded in 1909 and has since collected the rents thereof and spent or kept them for his own use, and that all he contributed to those buildings was his superintendence and work as a carpenter and builder. The evidence further shows that while she was in the hospital he obtained possession of a $1600 mortgage belonging to her and $300 of money in the bank, and after converting the mortgage into money bought a lot on Monroe street and with said moneys belonging to her built a two-flat building thereon, which he still owns in his own name, subject to a mortgage of $3000, and on which he collects, and has at all times collected, a rent of $50 per month and has retained the same for his own use. The evidence further shows that she let him have several amounts of her money at various times, amounting to $2000 or more, to go into the saloon business, which

ventures were failures and in which he lost all his investments except $350. From his evidence he had about $1200 or $1500 when he married appellee and had about the same amount of money when this suit was begun, and appellee still had about $1500 of other money when the master made his report. We have reviewed all the evidence in the record on the question of their property rights, and while it is in hopeless conflict it entirely supports the master's findings and the court's decree in that regard, and we think the decree should be sustained, as appellee received very little, if any, more in value thereby than her investments in the property and her moneys used and spent by appellant. The evidence also shows that she is now severely afflicted with kidney disorders, and is almost, if not entirely, incapacitated for further accumulations of money or property, and that he, while afflicted with a bad hernia or rupture, is nevertheless an excellent carpenter and wood workman and still capable of earning good wages at that trade.

The Homan avenue property was sufficiently described as "the property known as No. 506 Homan avenue," which appellant gave as its proper number, and it is sufficiently identified by that description even if the other description given it in the record was erroneous, as claimed by him.

The evidence does show, however, that the appellee has much more money and property by virtue of the decree of the court than has appellant, and that she is amply able, and much more able, to pay attorney's fees than is appellant. For that reason we think the court properly decreed that she should pay her solicitor's fees in the first instance, and that it erred in its determination to have taxed against him solicitor's fees for her counsel in case this cause should be reviewed by a higher court. In view of the very liberal allowance already made appellee, and considering the further fact that appellant is now left heavily in debt and that the expenses of this lawsuit will about, if not entirely, exhaust all his money now on hand, we think appellee is more

able to pay her attorney's fees than he, and that she should be decreed so to do. Whether or not an allowance should be made to a wife for alimony *pendente lite* and for solicitor's fees rests largely in the discretion of the court, it is true, but an abuse of such discretion is subject to review. The court may require the husband to pay the wife such sums of money as may enable her to maintain or defend her suit, and she is entitled to alimony during the pendency of the suit "when it is just and equitable." (Hurd's Stat. 1916, chap. 40, sec. 15.) She should not be allowed solicitor's fees when she is amply able to pay them herself and much more able financially to do so than her husband. *Harding* v. *Harding*, 144 Ill. 588.

The court also erred in allowing $35 per day to the master in chancery for eight and one-half days for reporting his conclusions of law and fact, itemized as time spent in hearing oral arguments, objections to report, etc. There are only 453 pages of evidence in the record, for the taking and certifying of which the law allows fifteen cents per hundred words and for which is taxed in this case a fee of $150, and which is apparently about the correct sum. It is very apparent that it could not possibly require eight and one-half days to hear arguments and to report the conclusions of law and fact in this case if a full day's work were performed each day. It is also unreasonable to allow $35 per day for that service, which is about as much, or more, than the judge who tried the case receives for each day he is actually engaged in the duties of his office, and as a matter of common knowledge it is more than twice as much as was ever paid in Chicago for judges from other jurisdictions while employed in the courts of Cook county. A master in chancery is entitled to only such fees as are specified in the statute, and in Cook county for reporting conclusions of law and fact he is entitled to such compensation as the court may deem just. The master's position and responsibility are inferior to those of the chancellor, and

his per diem compensation should not, in any event, be equal to or exceed the compensation of the chancellor when reduced to a per diem basis. (*Fitchburg Steam Engine Co. v. Potter,* 211 Ill. 138.) The master stated, as part of his report and as a basis for fixing his fees, that the necessary expense for maintaining his office was at the rate of $15 per day for each working day. Such fact should not be considered in arriving at a proper charge for such work.

The decree of the circuit court is affirmed except as to the allowance of the master's fees in the sum of $447.50, and as to said fees it is reversed and the cause remanded, with directions to allow the said master for his said fees not to exceed the sum of $250,—$150 for taking and certifying the evidence and $100 for reporting conclusions of law and fact, etc.,—and to not allow appellee's counsel solicitor's fees to be paid by appellant.

*Reversed in part and remanded, with directions.*