Home for Destitute Crippled Children and Robert F. Carr, Trustee, Appellees, v. Paul Chamberlain Boomer et al., Defendants.

Appeal of Paul Chamberlain Boomer and Laura Boomer, Appellants.

Gen. No. 42,614.

542

Opinion filed November 17, 1943.   Rehearing denied December 27, 1943.

HARRIS F. WILLIAMS, of Chicago, for appellants.

CAMERON, HEATH & BURRY, of Chicago, for appellees; JOHN R. HEATH, of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

In an amended and supplemental complaint filed in the superior court of Cook county on March 21, 1938, the Home for Destitute Crippled Children, a corporation, and Robert F. Carr, as trustee, plaintiffs, sought to compel Dr. Paul Chamberlain Boomer and Laura Boomer to deliver to the trustees certain stock certificates constituting the corpus of the trust as described in the trust instrument dated August 27, 1924, from Boomer as grantor, and for other incidental re-

lief. Dr. Boomer and his wife Laura Boomer defended on the principal ground that there had never been any delivery of the stock certificates and that the trust instrument, in and of itself, was not sufficient to create a trust. The master and chancellor held that the trust instrument was sufficient to create a trust without the physical delivery of the certificates, and a decree was entered on February 14, 1940 to that effect, directing that the certificates be delivered as prayed. This court affirmed the decree, holding that the physical delivery of the certificates was not necessary, and further that if such delivery were necessary, there had been delivery at a date subsequent to the execution of the trust instrument. The case is reported as *Home for Destitute Crippled Children v. Boomer*, 308 Ill. App. 170. A petition for leave to appeal was denied by the Supreme Court of Illinois. Paragraphs J, K and L of the decree of February 14, 1940 read:

"J. Defendants Paul Chamberlain Boomer and Laura Boomer shall pay the costs of this cause, and the court hereby retains jurisdiction of this cause for the purpose of entering herein a subsequent order or decree touching the fixing of master's fees herein and the taxing of such fees and costs.

"K. The court hereby retains jurisdiction of this cause for the purpose of entering a subsequent order or decree touching the allowance and payment out of the corpus of the said trust of plaintiffs' costs and expenses of suit and solicitors' fees and of the reasonable fees of The First National Bank of Chicago as custodian of the said certificates under order of this court.

"L. The court hereby retains jurisdiction of this cause as to matters adjudicated hereby, and leave is hereby granted to all parties hereto and to any successor trustee or trustees under the said trust instrument to apply to this court hereafter for such other

and further relief and instructions in the premises, as they or any of them may deem necessary. The service of a copy of any petition filed pursuant to this paragraph, or paragraph J or K above upon the parties defendant or plaintiff herein personally, or upon their respective solicitors of record shall be sufficient to give this court jurisdiction over the persons so served with respect to the subject matter of such petition.''

On September 19, 1941, after the case came back to the trial court, plaintiffs filed a petition for an order relating to the distribution of funds. On October 21, 1941 an order was entered pursuant to an agreement of the parties, substituting the First National Bank of Chicago as sole trustee. On November 21, 1941 plaintiffs filed another petition for an order respecting the payment of accumulated dividends to the trustee, and for the allowance of plaintiffs' attorneys' fees and expenses of suit, including reimbursement to plaintiffs for certain expenses and also for $1,947.10 which they had paid to Master John J. Kelly, to whom the original reference had been made. Plaintiffs sought by these petitions to have the costs taxed against the defendants Boomer, and the attorneys' fees and expenses paid out of the income of the trust rather than out of the principal. Since Boomer is entitled to receive the net income. of the trust estate during his lifetime, he strenuously resisted plaintiffs' efforts in this respect. The chancellor referred the matter to Master Herbert C. Paschen, who filed his report recommending the taxing of costs against defendants and the allowance to plaintiffs of their expenses incurred, including an allowance for attorneys' fees of $30,000, but recommending, with certain minor exceptions, that such sums be paid out of the corpus of the trust rather than out of the income of the trust estate. Both sides filed exceptions to the master's report. The chancellor and masters who passed on the case in chief are not the same as those who passed on the reserved issues.

On November 20, 1942 the chancellor entered a supplemental decree, which, in substance, sustained the master's report in all respects except that it directed that the amounts allowed to plaintiffs as attorneys' fees and expenses be paid out of the income rather than the principal of the trust. From this supplemental decree the Boomers have appealed.

Plaintiffs' (appellees) theory of the case is that in litigation of this type, brought by a trustee to recover possession of the trust *res,* for enforcement of the terms of the trust and for an accounting, the plaintiff is not required to bear the expense out of his own pocket, but is entitled to reimbursement out of the trust estate; that where, as in this case, the suit and expense thereof have been necessitated by the wrongful conduct of the income beneficiary in denying the existence of the trust and refusing to deliver the *res* to the trustee, the plaintiffs' reimbursement should come out of the income rather than principal; that the trust indenture, under which the plaintiff Carr was acting as trustee, contains in paragraph 8 an express provision that all legal charges and expenses incurred by the trustees shall be paid out of income; and that the amounts allowed by the chancellor as reimbursement were reasonable and proper. Defendants' (appellants) theory of the case is that plaintiffs, because of their secretive conduct in paying the "excessive fees of Master Kelly" in violation of the laws and rules of court and without notice to defendants and without an order of court therefor, are not in court with clean hands and are entitled to recover nothing in this proceeding; that the fees of Master Kelly, so improperly paid, are excessive under all of the decisions of the courts of review in this State; that the fees of Master Paschen, as fixed by the decree, are excessive in the amount of $118.14; that the item of $331.90 for the bank as custodian, the expense item of $868.74 for plaintiffs, the item of $30,000 for plaintiffs' attorneys'

fees, and the sum of $355 for the bank's attorney and appearance fee, all charged against Dr. Boomer's income, cannot stand, for the additional reason that there is neither contract nor statute to support them; and that the decree of February 14, 1940, being incomplete, and plaintiffs having come into a court of equity seeking its enforcement, are entitled to no relief until they have shown that such decree is just and equitable, and that their conduct in respect thereto has been above legal reproach, which the plaintiffs have utterly failed to do, and that a court of equity, in the light of the record, cannot enforce the decree of February 14, 1940 now or at any other time under the law of this and other States.

It appears that all the costs of the case which had been taxed against him up to the date of the supplemental decree of November 20, 1942, have been paid by Dr. Boomer. Master Kelly's fees had never been taxed up to the date of the supplemental decree, but were actually paid on November 3, 1939 by the Home. In his certificate Master Kelly showed $347.10 as having been charged for taking testimony at the statutory rate, and in addition thereto $1,600 for time devoted to the consideration of the case, etc., being 160 hours at $10 per hour. The charge of $347.10 is in accordance with the statutory rate of 15 cents per folio (100 words). The allowance of a fee of $1,600 was based on the statutory provision that the master shall receive such compensation as the court may deem just. (Section 20 of an act concerning fees and salaries, sec. 38, ch. 53, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 48.020]). Master Kelly issued his original report on September 19, 1939. Attached to this report was his certificate of fees and charges showing total charges of $1,947.10. Objections to the report were filed by the Boomers and also by the plaintiffs. On October 21, 1939 Master Kelly made a supplemental report. Objections were filed by the Boomers to the master's

supplemental report. On October 30, 1939 Master Kelly made a second supplemental report. On November 3, 1939, four days after the issuance of the second supplemental report, the Home paid and the master accepted the fees in the sum of $1,947.10, without such fees having been taxed and without an opportunity to the defendants to make objection thereto. Master Kelly's report, including the supplemental report and the second supplemental report, was filed in the clerk's office on November 8, 1939, five days after his fees were paid. At the hearing before Master Paschen an amended certificate was filed by Master Kelly giving more details as to the time which he spent on the case. One of the criticisms voiced by defendants is that the fees to the master were paid without the knowledge of the defendants. The record shows that at the time the parties were discussing the form of the original decree, the defendants then knew that the master's fees had been paid by plaintiffs. Defendants call our attention to the following from sections 2 and 3 of rule 58 of the rules of the superior court:

"Within ten days after publication and service of notice of the report, the parties desiring so to do shall file their objections thereto. The Master shall dispose of all objections so filed within fourteen days thereafter, and upon the disposition of all such objections shall promptly apply for an order taxing his fees upon the reference. No Master shall, prior to the disposition of all objections to such report, request of or accept from any party litigant, or his counsel, any stipulation as to the amount of his Master's fees. Nor shall he, prior to the taxation of his fees, request or receive any payment on account of his services upon the reference, except for fees already accrued for the taking and reporting of testimony at the statutory rate and taxable stenographer's fees." Master Kelly did not "promptly apply for an order taxing his fees upon the reference." The chancellor was well aware

that the master did not apply for an order taxing his fees. The failure of the master to promptly apply for an order taxing his fees, while a technical violation of the rule, did not harm any one. No doubt, the chancellor felt, as we do, that his failure to tax his fees would not affect the rights of the parties. Accordingly, the court retained jurisdiction for the purpose of entering a subsequent order fixing and taxing the fees of the master. We are of the opinion that the payment of Master Kelly's fees, without securing the consent of defendants and without having such fees taxed, should not deprive Master Kelly of his fees or the right of plaintiffs to require defendants to pay such fees. The proper practice under the rules of court is for the master, upon the disposition of all objections, to promptly apply for an order taxing his fees upon the reference. He may make such application, having disposed of all objections, and before filing his report. It will be observed that Master Kelly did not, prior to the disposition of all objections to such report, request or accept any stipulation as to the amount of his fees, or receive any fees. The purpose of the rule is to prevent a situation from arising where the master could be influenced in any way before the rendition of his final report by reason of the payment of his fees by any of the parties litigant. In the instant case the master rendered his report and disposed of all objections before he accepted his fees. We are of the opinion that the plaintiffs are entitled to be reimbursed for the fees so paid.

Master Kelly charged at the rate of $10 per hour for 160 hours taken up in consideration of the case, etc., or $1,600. Defendants state that if we consider 6 hours to constitute a day's work, Master Kelly put in 26⅔ days, and that at $34 per day, which counsel asserts is "the highest amount ever allowed," the fee would be approximately $906, and that this sum, added to the $347.10, gives a total of approximately $1,253.10,

the maximum that Master Kelly could charge. Defendants point out that the Supreme Court held $35 a day to be too much. *(Klekamp v. Klekamp,* 275 Ill. 98, 107.) Defendants state further that Master Kelly's fees at the rate of $10 per hour were excessive; that his charges are equivalent to $60 a day for a six hour day, $70 a day for a seven hour day or $80 a day for an eight hour day, whereas $34 a day is the largest amount that has ever been approved for masters' fees by courts of review in this State, citing *Klekamp v. Klekamp,* 275 Ill. 98, 107; *Herpich v. Williams,* 300 Ill. 540; *Comstock v. Morgan Park Trust & Savings Bank,* 367 Ill. 276, 283; *Norton v. Jordan,* 360 Ill. 419, and several other cases. We have read all of the cases cited and arrive at the conclusion that they do not lay down a hard and fast rule that a master cannot receive more than $34 per day. The cost of living is greatly increased, and particularly in the City of Chicago, since the *Klekamp* opinion. The standard court day in Cook county is five hours. We are of the opinion that the charge made by Master Kelly of $10 per hour is just compensation and is not in conflict with the Illinois cases cited to us. Defendants insist that Master Paschen's fees for examining questions in issue and reporting his conclusions thereon at the rate of $10 an hour for 23 hours, or $230, are subject to the objections raised against similar charges by Master Kelly. Each of the parties paid to Master Paschen one half of his fees. We are of the opinion that the chancellor was correct in directing that the defendants pay to the Home the sum of $374.60, which was the amount paid by it as its share of Master Paschen's fees. Our remarks as to the reasonableness of the fees of Master Kelly are applicable to the fees of Master Paschen.

Master Paschen recommended the allowance of $30,000 attorneys' fees for the plaintiffs to be paid out of the corpus, but the chancellor in the supplemental decree entered November 20, 1942 provided that the

$30,000 should be paid out of income. Defendants maintain that the $30,000 awarded to plaintiffs as attorneys' fees and the sum of $355 for the bank's attorney and appearance fee, all charged against income, cannot stand, for the reason that there is neither contract nor statute to support them, and for the further reasons that such fees are unreasonable and that the decree of February 14, 1940, "being incomplete and the plaintiffs having again come into a court of equity seeking its enforcement," are entitled to no relief until they have shown that such decree is just and equitable and that their conduct in respect thereto has been above legal reproach. Defendants voice similar objections to the amount of $868.74 allowed to the Home for its out-of-pocket expenses covering the fees of the court reporters, printing bills and so forth, and to the item of $331.90 allowed to the bank as custodian of the securities. Plaintiffs insist that the amounts so allowed were reasonable and proper, and state that their attorneys spent 189¾ hours before the master and the various courts, all of which time was spent by partners. In addition thereto 1,158 hours were devoted to the matter by plaintiffs' attorneys, of which 940¼ hours were partners' time, and 217¾ hours associates' time. Thus, a total of 1,347¾ hours, of which 1,130 hours were partners' time and 217¾ hours were associates' time, were devoted to this case by plaintiffs' attorneys. This was a complicated and hard fought case. The object for which the services were required was fully accomplished. The trustee's title to the stock was established, the certificates were recovered from Dr. Boomer and are now safely in the hands of the trustee. These services resulted in bringing into court a very valuable trust fund against the contention of the defendants that no such trust existed. The value of the stock at the time suit was commenced was approximately $200,000; at the time the decree was entered $224,000, and at the time the cer-

tificates were turned over to the trustee approximately $234,000. In addition at the time the supplemental decree of November 20, 1942 was entered, there was in the hands of the trustee over $36,000 in accumulated income. The fee of $30,000 allowed for the services of the attorneys for plaintiffs is approximately 13 per cent of the value of the stocks at the time they were turned over to the trustee. Following the practice of the courts in analogous factual situations, this fee is reasonable, and we so find. The record is clear that the $868.74 allowed to the Home for its out-of-pocket expenses represented amounts actually paid out, and that such amounts were reasonable. The item of $331.90 for the bank as custodian and the item of $355 for the bank's attorney and appearance fee are reasonable charges.

Defendants assert that the decree of February 14, 1940 is incomplete and unenforceable, and that plaintiffs are treating such decree as being subject to further examination as to justness and conscience; that plaintiffs are refusing to follow decretal paragraph K, which provides for the payment of plaintiffs' costs and expenses, solicitors' fees and the fees of the First National Bank of Chicago out of the corpus, and are claiming that these three fees should be paid out of income. Defendants argue that they are entitled to have the decree re-examined for justness and conscience before any relief thereunder, such as is being sought by the plaintiffs, can be granted, and that if the plaintiffs, whose decree it is, can open it up for justness and equity, defendants should certainly have the same privilege. We have read the cases cited by defendants in support of their position. In *Lancaster v. Snow*, 184 Ill. 534, the court said:

"Since the opinion was filed in *Wadhams v. Gay*, 73 Ill. 415, the rule has been in this state that where an original bill is filed asking for a decree to carry a former decree into execution, the court may look into

the original case and see if the former decree is equitable and just, and if it is not, may refuse to enter a decree or enforce and carry it out."

We are of the opinion that the decree of February 14, 1940 was equitable and just, and that it is enforceable. In fact, that decree, except as to the payment of attorneys' fees, expenses and masters' fees, has been carried out. Having decided that the fees allowed by the chancellor are reasonable, that the decree is just and that the fees should be paid, we turn now to a consideration of the proposition as to whether plaintiffs are entitled to be reimbursed out of the trust estate for their costs and expenses of suit, including attorneys' fees.

Paragraph 7 of the trust instrument vests in the trustees full power and authority to take all steps and proceedings at law or in equity or otherwise to protect the trust estate, and to enforce all rights of action arising out of or in connection with any of the securities, constituting a part of such estate. Paragraph 9 contains the usual provision that the trustees in the discharge of their duties may employ attorneys and counsel. Paragraph 8 provides that the trustees shall at all times during the continuance of the trust, "collect all the income, interest and dividends of the trust estate and after deducting therefrom all taxes, assessments, legal charges and expenses paid out or incurred in connection with the care and management of the trust property and the exercise of the powers hereby conferred, pay over the balance thereof to the persons and at the time and in the manner hereinbefore specified. The trustees are hereby given and they shall have a lien upon the trust estate for all such taxes, assessments, legal charges and expenses." From this provision it will be noted that the trustees are empowered to employ attorneys and to take all

necessary steps and proceedings to protect the trust estate. Paragraph 8 expressly provides that all legal charges and expenses in connection with the care and management of the trust property and the exercise of the powers conferred, shall be deducted from the income of the trust, the balance thereof to be paid over to the persons specified. Our view is that the trust instrument contemplates that the expenses and fees incurred by plaintiffs should be chargeable against the income of the trust.

The well established principle of law is that in the absence of provisions to the contrary in the trust instrument, ordinary expenses of administration of a trust are chargeable to income and extraordinary expenses to principal, and it is usually held that the expenses of a trustee who has been required to lay money out in the protection of a trust estate, including attorneys' fees, will be charged to the principal of the trust rather than to income. The rule is also well established that where a beneficiary brings a suit against the trustee which is groundless, the solicitors' fees and expenses of the trustee in defending the charge are to be paid out of the share of the complainant in the trust estate and not charged against the estate generally, nor against a general fund by which co-beneficiaries would have to contribute. (*Patterson v. Northern Trust Co.,* 286 Ill. 564.) The rule is succinctly stated in *Mandell v. Green,* 108 Mass. 277, as follows: ''The case falls within the rule by which courts of equity impose the costs of necessary litigation upon the party who has caused it.'' We have held that under the express provision of the trust instrument attorneys' fees and expenses are property payable out of income. We are also satisfied that even though there were no such provisions in the trust agreement the costs, expenses and attorneys' fees should be charged against income because of the

wrongful conduct of Dr. Boomer. The statement of facts relating to this conduct will be found in the previous opinion of this court (308 Ill. App. 170).

Defendants state that costs are not recoverable at common law. Costs were not recoverable at common law and they can be recovered only in cases where there is statutory authority therefor. *Wintersteen v. National Cooperage & Woodenware Co.*, 361 Ill. 95, 108. Any party claiming a judgment for his costs must bring himself within the operation of some statutory provision and courts have no power to tax costs against anyone on merely equitable grounds. (*Patterson v. Northern Trust Co.*, 286 Ill. 564.) However, in the instant case the only amounts in dispute taxed as costs against the defendants are the masters' fees. The other amounts were directed to be paid out of the income of the trust.

We are convinced that the attorneys' fees and expenses should be paid out of the income. At this stage we are confronted with paragraph K of the decree of February 14, 1940, which provided that the court retained jurisdiction ''for the purpose of entering a subsequent order or decree touching the allowance and payment out of the corpus of the said trust of plaintiffs' costs and expenses of suit and solicitors' fees and of the reasonable fees of The First National Bank of Chicago as custodian.'' Defendants urge that if Dr. Boomer had elected to abide by the decree when entered, the costs, including fees and expenses, would then and there have been fixed and paid, and that they could not have been paid at that time except out of the corpus as provided in paragraph K because there was no income on hand at that time, Dr. Boomer not having been deprived of the income prior to the entry of the decree. Had Dr. Boomer decided, before perfecting his appeal, that he would abide by the decree, the matter of the payment of fees and expenses would

have to be settled by the chancellor, unless the parties came to an agreement and then the agreement would require the chancellor's approval. Plaintiffs maintain that there was no judicial determination by the decree of February 14, 1940 that the attorneys' fees, costs and expenses be paid out of the corpus of the trust. They assert that paragraph K was nothing more than a reservation of jurisdiction by the court for the purpose of entering a decree dealing with such matters at a later date, and that the words "out of the corpus of the said trust" should be regarded as mere surplusage. The record shows that the question as to whether the fees and expenses should be paid out of the corpus or income was not discussed or argued before the chancellor when the decree was entered, or at any time prior thereto. Our view is that paragraph K reserved the entire matter of the determination of the fees and expenses, and that the court in the supplemental decree entered on November 20, 1942 was right in directing that the plaintiffs' attorneys' fees and expenses be paid out of the income rather than out of the corpus of the estate. Under the circumstances presented by the record, it would be wholly inequitable and unjust that the destitute and crippled children of Chicago should bear the expense of recovering and preserving this fund created for their benefit, and that Dr. Boomer, who denied the very existence of the trust, and who in some fashion acquired possession of the securities, claimed them as his own and resisted all efforts to recover them until he was compelled by the decree to deliver them, should escape payment thereof.

For the reasons stated, the decree of the superior court of Cook county is affirmed.

*Decree affirmed.*

KILEY, J., concurs.

HEBEL, P. J., took no part.